REBECCA KIRK, Respondent, v. SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, Appellant.

Kansas City Court of Appeals. February 17, 1913.

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Payment of Dues: Expiration of Time. The plaintiff, the mother and benefiiciary of the insured, sued to recover on a certificate of insurance issued to her son by the defendant, a Fraternal Beneficiary Association. The certificate was issued, and delivered to the plaintiff's son on May 2, at which time he paid a month's dues, which would keep the insurance alive until the end of June. The defendant contended that the payment of dues was for the months of April and May, because the insured was required to pay his dues under penalty April 5, by the terms of the application. Therefore, the defendant having died in June the policy had lapsed. Held, that the payment of the insurance was for the months of May and June. Hence the plaintiff rightfully recovered on the certificate, as the insurance was in force at the time of the insured's death.

2. ———: Contracts: Time to Take Effect. Where parties agree in an application for insurance that the contract shall not take effect until the delivery of the policy at a certain time and under certain specified conditions, such agreement will be enforced.

3. ———: Unilateral Provisions. Contracts. A provision of a contract of insurance which attempts to bind the insured to the payment of premiums and to exonerate the insurer from a corresponding liability, is unilateral and unenforceable.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover*, Judge.

169 Mo. App.—29

Affirmed.

*McCune, Harding, Brown & Murphy* for appellant.

Kirk's May assessment was not paid, for which reason he stood suspended when he died, and therefore his certificate was void and no recovery can be had thereon by plaintiff. Kohen v. Life Assn., 28 Fed. 705; Misselhorn v. Life Assn., 30 Mo. App. 589; Misselhorn v. Life Assn., 30 Fed. 545; Wilcox v. Woodmen of the World, 76 Mo. App. 576; McLendon v. Woodmen of the World, 52 L. R. A. 444.

*H. T. Wieman* for respondent.

When a forfeiture is sought on a doubtful provision, the language must be construed strictly against the insurer and in favor of the insured; or, in other words, in such doubtful cases the doubt shall be resolved in aid of the contract, and so as to avoid the forfeiture. Lewine v. Lodge, 122 Mo. App. 560; Rem v. Lodge, 83 Mo. App. 442; Logsdon v. Lodge, 34 Wash. 666; s. c., 76 Pac. 292, 142 Mo. App. 552.

JOHNSON, J.—This is an action on a death benefit certificate issued by defendant, a fraternal beneficiary society, incorporated in Nebraska and licensed to do business in this State. The defense is that all rights of the member and of plaintiff, his beneficiary under the certificate, had been forfeited by the failure of the member to pay dues and assessments which had become due and payable in the month preceding that of his death. Plaintiff contends that the duties and assessments for that month were paid. The cause was tried without a jury and after hearing the evidence the court rendered judgment for plaintiff as prayed in the petition. Defendant appealed.

The facts of the case are as follows: March 11, 1907, George H. Kirk made application in writing for membership in one of defendant's local lodges in Kansas City and "for participation in the beneficiary fund, in accordance with the laws of the order to the amount of $1000 or such amount as the sovereign physician may approve." He designated plaintiff, his mother, as his beneficiary and agreed that the application, the examining physician's report and all "the provisions of the constitution and laws of the order, now in force or that may hereafter be adopted, shall constitute the basis for and form a part of any beneficiary certificate that may be issued to me by the Sovereign Camp of the Woodmen of the World, whether printed or referred to therein or not."

Further he agreed "to pay all assessments and dues for which I may become liable while a member of the order as required by its constitution and laws, and that the liability of the sovereign camp for the payment of benefits shall not begin until after this application shall have been accepted by a sovereign physician, a beneficiary certificate issued thereon and personally delivered to me by an authorized person while I am in good health, until I shall have been obligated in due form and all the requirements of section 58 of the constitution and laws of said order have been complied with."

Section 58 to which reference thus was made provided: "The liability of the sovereign camp for the payment of benefits on the death of a member shall not begin until after his application shall have been accepted by a sovereign physician, his certificate issued, and he shall have:

"First. Paid all entrance fees.

"Second. Paid one or more advance monthly payments of assessments and dues known as 'Sovereign Camp Fund.'

"Third.  Paid the physician for medical examination.

"Fourth.  Been obligated or introduced by a camp or by an authorized deputy in due form.

"Fifth.  Had delivered to him, in person, his beneficiary certificate while in good health.

"The foregoing are hereby made a part of the consideration for, and are conditions precedent to the liability for the payment of benefits in case of death."

March 14, 1907, Kirk was elected to membership in the local lodge and duly initiated.  His application was forwarded to the sovereign camp at Omaha, was approved by the sovereign physician and on March 28, 1907, the certificate in suit was issued by the sovereign clerk and mailed to the clerk of the local lodge in Kansas City for delivery to Kirk.  The certificate contains the following provisions:

"This certificate is issued and accepted subject to all of the conditions on the back hereof and subject to all of the laws, rules and regulations of this fraternity now in force or that may hereafter be enacted, and shall be null and void if said sovereign does not comply with all of said conditions and with all of the laws and regulations of the sovereign camp of the Woodmen of the World that are now in force or which may hereafter be enacted, and with the by-laws of the camp of which he is a member."

"1st.  This certificate is issued in consideration of the representations, agreements and warranties made by the persons named herein, in his application to become a member and in consideration of the payment made when introduced in prescribed form, also his agreement to pay all assessments and dues that may be levied during the time he shall remain a member of the order.

"2nd.  If the admission.fees, dues and sovereign camp fund assessments levied against the person named in this certificate are not paid to the clerk of his

camp as required by the constitution and laws of the order, this certificate shall be null and void and continue so until payment is made in accordance therewith.

"3rd. There shall be no liability of the sovereign camp of the Woodmen of the World under this certificate until the member named herein shall have paid all entrance fees, paid one advance assessment of sovereign camp fund assessments and camp general fund dues for the month, paid the physician's fees for medical examination, being obligated or introduced by a camp or authorized deputy in due form and had delivered to him in person this beneficiary certificate while in good health.

"The foregoing provisions are hereby made a part of this consideration for and are conditions precedent to the payment of benefits under this certificate."

This certificate was received by the clerk of the local lodge March 29th or 30th, 1907, but was not delivered to Kirk until May 2d, for the reason that Kirk did not attend lodge in April, pay his initial assessment and dues, or call for the certificate. The laws of defendant provided that if an applicant did not make such payment and receive his certificate before the fifth day of the month succeeding that in which the sovereign clerk issued the certificate, it should be returned by the local clerk to the sovereign clerk for cancellation. To prevent such result the local clerk handed the certificate to one of the members for delivery on payment of the first assessment and this member in turn gave it to another member, a friend of Kirk who, as an inducement to him to accept the certificate, loaned him the money to pay the assessment and dues for the first month. A section of the by-laws provided that "the first assessment and dues which must be paid by an applicant as provided in these laws shall pay the liability of a member for the

first month following the month in which the certificate was issued by the sovereign clerk.''

Another by-law provided: ''Upon the delivery of a beneficiary certificate to an applicant he shall deposit with the clerk of the camp one advance payment of sovereign camp fund for his age as provided in tables of rates in section 56 of these laws, and one monthly payment of camp dues.

''No clerk shall accept any payments, except entrance fees, from an applicant until said applicant's beneficiary certificate has been received by said clerk from the sovereign camp, and properly countersigned by the camp officers, and not unless said applicant is in good health at the time.''

At the time of the delivery of the certificate to Kirk which, as stated, was May 2, 1907, it bore the following indorsement: ''He has made all payments required, and has been introduced as a member of this camp. Signed this 2nd day of May, A. D. 1907.

ADOLPH BOBEUKER,
Consul Commander.
A. M. GOLDSMITH,
Clerk.''

The member who delivered the certificate testified that he told Kirk the payment of the assessment and dues was for the month of April and would keep the insurance in force until the last day of May when he would have to pay the May assessment or the insurance would be forfeited. Kirk made no further payment and died June 11, 1907.

The position of plaintiff is that the payment thus made by Kirk was the May assessment and kept the certificate alive until the last day of June at which time Kirk, had he been living, would have had to pay the June assessment on pain of forfeiture.

A by-law provided that ''No officer, employee or agent of the sovereign camp, or of any camp, has the power, right or authority to waive any of the condi-

tions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this constitution or these laws. Each and every benefit certificate is issued only upon the condition stated in and subject to the constitution and laws then in force or thereafter enacted.''

This law, which obviously was intended to protect defendant against being held to account for the unauthorized promises and statements of its officers and agents and to secure uniformity and consistency in the transaction of its beneficiary business, we think precludes defendant from˚relying in any degree on the construction of the contract expressed to Kirk by the member who delivered the certificate.

A familiar rule observed by courts in the interpretation of private contracts is that in ascertaining the contractual intention of the parties, the construction they subsequently placed on the terms of the contract is entitled to great weight. But that rule has no application here for the reason that the member who acted as the agent of defendant in delivering the certificate had no authority either real or apparent to determine whether or not the assessment required to be paid was the April or May assessment, neither had the clerk of the local camp in whose custody the certificate had been reposing such authority. The only authority either of these functionaries possessed under the rules imposed by defendant was to deliver the certificate and collect the assessment. The rights thereupon accruing to Kirk and the reciprocal burdens devolving upon him were fixed by the terms of the written contract which consisted of the certificate, his application and the constitution and laws of the association and are not to be affected by an understanding of the meaning of the contract expressed by one not clothed with authority to bind defendant. Kirk was under no duty of coming to an oral agreement with anyone or of contradicting an unauthorized con-

struction of his rights and it is immaterial whether he agreed or disagreed with the views of the agent. In accepting the certificate he became bound only to perform the obligations imposed on him by the terms and conditions of the written contract.

In solving the problem of whether the payment in controversy should be treated as a payment of the April or of the May assessment, the first task of importance is the solution of the question of when the contract became binding on defendant as a contract of insurance.

In clear and positive terms the application, certificate and by-laws provided that the liability of defendant for the payment of the death benefit should not begin until the delivery of the certificate to Kirk while he was in good health and that such delivery should not be made until he had paid all entrance fees, one or more advance monthly assessments and dues, the fees for the medical examination, and had been initiated or introduced by a camp or by an authorized deputy in due form. The contract expressly stipulated that the occurrence of all these events should be regarded as conditions precedent to the creation of liability on the part of defendant to pay the death benefit.

This was an agreement the parties had the undoubted right to make and, therefore, is one that should be given the full effect obviously intended. The rule is one of general observance that where the parties agree in the application that the contract shall not take effect until the delivery of the policy at a certain time and under certain specified conditions, such agreement will be enforced. [Gallop v. Royal Neighbors, 150 S. W. 1118, 167 Mo. App. 85; Misselhorn v. Life Assn., 30 Mo. App. l. c. 600; Modern Woodmen v. Owens, 130 S. W. (Tex.) 862; Kohen v. Life Assn., 28 Fed. 705; Misselhorn v. Life Assn., 30 Fed. 545; Wilcox v. Woodmen of the World, 76 Mo. App. l. c. 576;

McLendon v. Woodmen of the World, 52· L. R. A.
444.]

Until the delivery of the certificate to Kirk on.
May 2, 1907, the liability of defendant as an insurer
had not begun, nor was there a contract of insurance
between the parties, but only an agreement to insure
and be insured on the performance of certain prece-
dent conditions. We noted this distinction in Missel-
horn v. Life Assn., supra, where we said: "Leading
writers on insurance note the distinction between an
agreement to insure and be insured, and a contract of
insurance—the policy. The steps towards obtaining
insurance, the negotiations, arranging the terms of
the agreement between the parties as to what the con-
tract of insurance shall be, constitute the preliminary
agreement, but the policy which is issued and delivered
in accordance with these negotiations and terms is the
contract of insurance."

Before manual delivery the certificate possessed
no force or vitality. It required that act to vitalize it
into an insurance contract and we find ourselves un-
able to agree with the argument of counsel for de-
fendant that under the by-law which provided that
"the first assessment and dues which must be paid by
an applicant as provided in these laws shall pay the
liability of a member for the first month following
the month in which the certificate was issued by the
sovereign clerk," contractual force was imparted to
the certificate to the extent of binding the insured by
the mere facts of the execution of the certificate by
the sovereign clerk and its delivery into the hand of
the clerk of the local lodge. Reduced to its last analy-
sis this argument of defendant is the assertion of a
right to collect a payment in the nature of a premium
for a policy of life insurance for the month preced-
ing that in which defendant became bound as an in-
surer. Standing alone the by-law from which we have
just quoted might be susceptible of the construction

placed on it by defendant but read and considered in the light of all the other terms and conditions of the contract, such construction is found to be untenable. It was not the intention of the parties that the applicant should be bound to pay a premium covering a period in which defendant would be free from all corresponding liability and in a position to refuse to enter into a contract of insurance with the applicant. The advance monthly assessment, payment of which was required of the applicant as a condition precedent, referred to the first monthly premium for insurance and not to a premium for an agreement to enter into a contract of insurance on conditions that might prove impossible of performance. If there were any doubt about the meaning of the contract, that doubt would be set at rest by application of a well-known rule of law that denounces as unilateral and unenforceable a provision in a contract of insurance which would attempt to bind the insured to the payment of premiums and to exonerate the insurer from his corresponding liability.

Speaking of the nature of contracts of insurance it is said in 1 May on Insurance (4 Ed.), sec. 4: "It is, moreover, a conditional contract for when no risk attaches no premium is to be paid, or, if paid, must, in the absence of fraud be returned to the assured. In point of fact, the contract is to pay the premium on condition that the risk is run."

In the succeeding section the author observes: "It is also what the French writers term an *aleatory* contract, or one in which the equivalent consists in the chances for gain or loss, to the respective parties, depending upon an uncertain event, in contradistinction from a commutative contract, in which the thing given or act done by one party is regarded as the exact equivalent of the money paid or act done by the other. Each party runs his risks. The insurer will gain the premium if no loss happens; and will be

obliged to make reparation if it does. On the other hand, the insured will, in the former case, have paid his premium to no purpose; while, in the latter, he will be indemnified for his loss by the insurer."

In the case of Stevenson v. Snow, 3 Burr. 1237, Lord MANSFIELD said: "Equity implies a condition 'that the insurer shall not receive the price of running a risque, if he runs none.' . . . If the risque is not run, though it be by the neglect or even fault of the party insuring, yet the insurer shall not retain the premium."

The same view of the nature of such contracts is expressed in Life Ins. Co. v. Smith, 92 Fed. 1. c. 509; Jones v. Ins. Co., 90 Tenn. 604; Matthews v. Ins. Co., 40 Ohio St. 135.

While it is true as argued by defendant that parties may make any contract they please, it also is true that a unilateral contract, one that is not supported by a consideration, is nonenforceable. The only consideration the insured can have for his promise to pay a premium is the reciprocal obligation of the insurer to incur the risk which is the very subject-matter of the contract.

These considerations compel us to hold that the assessment and dues paid by Kirk were for the month of May and that the insurance was in force at the time of his death.

The judgment is affirmed. All concur.