BERNICE MITCHELL, RESPONDENT, v. AMERICAN MUTUAL ASSOCIATION, APPELLANT.—46 S. W. (2d) 231.

Kansas City Court of Appeals. January 11, 1932.

*Daniel Herider, Louis J. Rasse* and *Jerry M. Jeffries* for respondent.

*Hargus & Johnson* and *Duggins & Johnson* for appellant.

BOYER, C.—This is an action to recover upon an alleged certificate of membership and of insurance issued by defendant to J. Ralph Mitchell, husband of plaintiff, the beneficiary. Upon trial before a jury, plaintiff had a verdict for $2000, and defendant duly appealed. The principal point urged by appellant is that the trial court erred in refusing defendant's peremptory instruction in the nature of a demurrer to the evidence requested at the close of the case.

The petition alleges that defendant is a corporation engaged in life insurance with its chief office at Osceola, Missouri; that J. Ralph Mitchell on the 8th day of April, 1930, made application for insurance in said company and became a member thereof; that plaintiff, his wife and now his widow, was the named beneficiary; that at said time the application fee for membership and the fee for dis-

ability benefits were paid to defendant; and at said time the applicant agreed and bound himself to pay an annual membership fee thereafter so long as he remained a member; that defendant received the application and payment and accepted and held same; and "that said association then and there contracted and agreed with said J. Ralph Mitchell to issue to him the certificate of membership, and that by virtue of his membership in said association defendant contracted and agreed on the death of said J. Ralph Mitchell to levy an assessment upon the remaining members of said association and within sixty (60) days thereafter deliver, transmit and pay the plaintiff herein the sum of two thousand ($2000) dollars." It is further alleged that the application and the payments were made to one Daniel Herider, agent of defendant, who "then and there acting for and on behalf of said defendant's company informed and led him, the said J. Ralph Mitchell, to believe that on such payment and delivery of said application to him the said Herider, agent, as aforesaid his membership in said association became complete and on his death at any time thereafter the defendant's association would pay to this plaintiff the said sum of two thousand ($2000) dollars, that two days thereafter it would deliver to him a certificate of his membership. She further says that the said Daniel Herider, agent, and said defendant company did not use diligence and issue such certificate though in the usual course of business and according to agreement such certificate should have been and would have been issued by the 10th day of April, 1930. That such delay was caused by the negligence of defendant, its officers and agents; that on the 16th day of April, 1930, the defendant, its officers and agents, then fully knowing all the matters and things herein alleged, accepted said application as to its date, issued a certificate of insurance and membership to said J. Ralph Mitchell certifying that the said J. Ralph Mitchell had become and was a member of said association and thereafter delivered to this plaintiff said certificate of membership." It is further alleged that J. Ralph Mitchell died April 13, 1930, "while a member in good standing in said association;" that within a reasonable time thereafter due notice was given defendant of said death and forms for proof of death were requested and that demand was made upon defendant for payment; "that on her demand as aforesaid the defendant denied liability under said membership and certificate of membership and refused to do or perform any of the things under its contract it was bound to do and refused to pay to plaintiff said sum of two thousand ($2000) dollars or any part thereof, and on April 26, 1930, wrongfully attempted to cancel the certificate of membership and insurance so issued . . ." The prayer was for judgment for $2000, with interest from April 26, 1930.

The answer admits that defendant is a corporation and as such was doing life insurance business in the State of Missouri, with its chief office at Osceola. It is admitted that plaintiff at the time mentioned was the wife of J. Ralph Mitchell; that he died April 13, 1930, and that plaintiff is his widow. Each and every other allegation of the petition is denied. For further defense it is alleged that defendant is organized under Article III, Chapter 50, Revised Statute 1919, and is doing business on the assessment plan of insurance; that during the month of April, 1930, Dan Herider was acting for defendant as one of its soliciting agents to secure applications for insurance at Marshall, Missouri, and surrounding territory; that Herider is the father of plaintiff and the father-in-law of J. Ralph Mitchell; that they all resided together in the same home in Marshall; that on the 15th day of April, 1930, defendant received from said Herider an application for membership; that on the 16th day of April, 1930, the defendant received from Herider the office fee required to be sent to the home office with all applications, and without any knowledge of the death of Mitchell the association issued its certificate of membership to him; and "defendant further states that said Dan Herider and the plaintiff conspired to cheat and defraud this defendant by mailing said purported application to the defendant at its home office at Osceola, Missouri, subsequent to the death of J. Ralph Mitchell, each well knowing that it was their duty to notify said defendant of his death, but conspired to conceal and did conceal said fact from this defendant, and knowing that said defendant had no knowledge that said J. Ralph Mitchell was dead." The answer sets forth provisions of the application and of the certificate. The application recites:

"(9) I understand that this application and the certificate of membership to be issued hereon, contain all the conditions and provisions relating to, or affecting my membership in the association, and which constitutes a contract between the association and me, subject only to such modifications that may be made therein by the by-laws of the association.

"(12) I hereby warrant and agree that the statements above made are true and that the truthfulness of the same is a condition precedent to any liability on any certificate of membership issued to me by said association. It is further expressly agreed and understood that no agent of this association or any other person has any right or authority to waive the truthfulness of the answers to the foregoing questions and that said association shall not be bound by any act, statement or representation by any such agent or other person not contained and set forth in this application."

"This application made this 8th day of April, 1930, subject to the approval of the board of directors of the association at the home office at Osceola, Missouri."

The certificate contains the following provision:

"(5) This certificate is null and void and of no effect, if the applicant to whom issued is not in normal good health, or under the care of a physician or unable to attend to his usual vocation when issued, or at any subsequent reinstatement; and no reinstatement shall be made for any member not insurable by law in this association."

The answer also pleads a tender to plaintiff of the sum which Herider reported he had received from Mitchell, and again tenders said sum to plaintiff. The reply denied each and every allegation of new matter contained in the answer.

Plaintiff offered in evidence the certificate sued on and the application for membership. They contained among others the provisions set out in the answer. Further evidence on behalf of plaintiff tends to show that Dan Herider was the local agent of defendant and was appointed such by the superintendent of agents named Strother. Such appointment was evidenced by the agent's contract executed in writing. It recites that defendant appointed Herider its agent with limited authority to solicit memberships at Marshall and open territory, and defendant agreed to furnish him with all necessary supplies pertaining to said agency. The agent agreed to solicit memberships for the association in the territory named and to collect with each application for membership the sum of five dollars and with each application for disability benefits the sum of one dollar, and to forward all applications promptly to the home office at Osceola, accompanying each application with remittance of fifty cents, it being understood that no application would be accepted unless accompanied by said remittance. Herider agreed to be subject to the supervision of Strother, the superintendent of agents at Eldon, Missouri, as to territory and methods of work and in other instructions pertaining to the interest of said association, and that at any time his work was unsatisfactory he would surrender his credentials and supplies. The agent's contract was made September 23, 1929.

Herider was the father of plaintiff and father-in-law of J. Ralph Mitchell. Plaintiff and her husband resided in the household of her father. Prior to April 8, 1930, Herider and the superintendent of agents, Strother, had talked to Mitchell about insurance and solicited his application, and on the last named date, shortly after breakfast in the home, Mitchell signed the application for both life insurance and for disability benefits and paid Herider the sum of six dollars. This sum was retained by the agent except fifty cents which was

sent to the company as the office fee required with each application. The application was for membership in the association in accordance with its by-laws. Plaintiff was named beneficiary as wife of the applicant. By the terms of the application the applicant authorized the association to charge him with an annual membership fee of two dollars and the assessments according to a table attached. Herider put the application in his pocket and retained it, according to his evidence, until Saturday April 12, 1930, when he deposited it in a street mail box between nine and ten o'clock P. M., addressed to the company. He said he carried the application to show to other prospective applicants and to aid him in obtaining other applications; and also because he forgot to mail it earlier.

On April 12, 1930, and about the hour of 9:30 P. M., Mitchell received an injury from which he died at about two o'clock the following morning. At the time the application was deposited in the mail box, Herider says he had no knowledge of the injury to the applicant. Mitchell was buried on April 14th. The application was received at the home office of the company April 15th. There was no letter or fee accompanying it, and on that day defendant wrote to Herider calling his attention to this fact and that the application would be held until the fee reached the office. Early the next morning, April 16th, the fee was received from Herider together with other remittances, but there was no notice of Mitchell's death. On the same day the company issued its certificate of membership to J. Ralph Mitchell and mailed it to Herider.

Herider testified that he mailed the application on the evening of the 12th, and the fee on the 14th. On cross-examination Herider testified that he was not required to notify the company of Mitchell's death, and when asked why he did not tell the company that his son-in-law was dead when he sent in the application and fee, he said: "I had no idea to; I wasn't told to." When asked whether he ever sent a letter to the company, he replied: "I never was required to send no letter." There is evidence that the superintendent of agents, Strother, was in Marshall on April 15th, and learned of the death of Mitchell, and that plaintiff claimed that he had a policy in defendant company.

Plaintiff testified to the execution of the application, payment of the money to her father, and the death of her husband on the 13th and his burial on the 14th of April, and that on the following day, April 15th, she saw the superintendent of agents, Strother, who informed her that he had heard that her husband had insurance; she told him he had; that he asked all about the injury and death and said he was certainly sorry and would do all in his power to help her get the insurance because he thought she needed it. This was

during the afternoon of the 15th. She further testified on cross-examination that after the application was signed she heard nothing further about it, but supposed her father had mailed it; that on the night of her husband's death, and while at home, her father was talking to her mother about the matter and that was the first she knew that he had never sent it off before; that "he said something about not sending it off until nine, that is all he said;" that was Saturday night and her husband died Sunday morning at two o'clock. She said it wasn't her place to call the company and inform them of her husband's death while the application was still in the mails.

On April 25, 1930, defendant wrote plaintiff a letter as follows:

"In view of the fact that your husband, J. Ralph Mitchell, was deceased at the time the application for membership in this association insuring his life was placed in the postoffice at Marshall, Missouri, and that with the knowledge of the agent mailing said application, the certificate issued bearing number BD-4-403, is hereby cancelled."

Evidence on behalf of plaintiff further shows that instructions to agents were to mail applications promptly with the office fee, and that a week between the date of application and date of certificate was too much. It further appears from the testimony of the secretary-treasurer of defendant company, elicited on cross-examination, that in the usual course of business and in the usual progress of the mails between Marshall and the home office of the company, the certificate would have been issued in about two days after the application was mailed, and if the application in question had been mailed on the 8th day of April, in the ordinary course of business, it should have been approved and in force not later than the 10th.

Evidence on behalf of defendant tends to show that the application for membership was not mailed until after the death of Mitchell, and from all the facts and circumstances in evidence there was support for its defense of a fraudulent conspiracy and concealment of facts on the part of the agent Herider and the beneficiary to procure the issuance of a certificate upon the life of Mitchell after his death.

The articles of association offered in evidence provide that the business of the association shall be conducted by a board of directors consisting of three members; that said board shall have power to adopt by-laws, and to alter and amend same and provide all rules and requirements for admission to membership. The office of secretary-treasurer was created and it was provided that he should be the custodian of all property, books, papers, documents, and records of the association, and that he should issue and countersign all certificates of membership, give notice of claims and of assessments

levied, and perform other duties. The defendant was incorporated and was conducting the business of life and casualty insurance on the assessment plan as prescribed in Article III, Chapter 50, Revised Statutes 1919. The board of directors created the office of superintendent of agents and prescribed that his duties should be to supervise the various solicitors, appoint solicitors, make investigation of claims, and adjust claims as he might be directed from time to time by the board of directors. J. A. Strother, Eldon, Missouri, was elected to fill said office during the pleasure of the board and was employed at a fixed salary. Defendant offered in evidence the written contract by which Strother was employed, for the purpose of showing that his authority was limited to that of superintendent of agents. Upon objection the offer was refused.

The record is large, but we have stated in substance the evidence pertinent to the points raised on this appeal, and may make further reference thereto in the discussion of such points.

At the close, defendant requested a peremptory instruction in the nature of a demurrer to the evidence which was overruled. The case was submitted to the jury by instructions on behalf of plaintiff solely on the theory that the defendant "while its officers and agents or superintendent of agents knew that said J. Ralph Mitchell had been injured on the 12th day of April and had died on the 13th day of April, and so knowing accepted said application and issued its certificate of insurance and membership certificate thereon." If such facts were found the jury was directed to return its verdict for plaintiff, unless it further found that she had fraudulently conspired with her father, the agent of the company, to procure the issuance of the policy sued upon, and did so obtain it as explained in another instruction.

By plaintiff's instruction 2, the jury was further directed that if it found "that the association issued the certificate after the death of said J. Ralph Mitchell and at the time same was issued to J. Ralph Mitchell the superintendent of agents of defendant company knew the said J. Ralph Mitchell was dead," then the provision in the certificate that it should be null and void if the applicant is not in normal good health was waived by the defendant and the verdict should be for plaintiff, unless the jury should find conspiracy as explained in another instruction.

### Opinion.

It was error to submit the case to the jury upon the theory indicated by the instructions mentioned. Both of them rendered the defendant liable if the superintendent of agents knew of the death at the time the certificate was issued. Said agent did not acquire

knowledge of the death until two days thereafter and on the same day the application reached the home office. There is no evidence that his knowledge was communicated to defendant until after the certificate was issued, and no evidence that the board of directors or the secretary-treasurer had any intimation of the death of Mitchell at the time the certificate was issued. There is no evidence that the superintendent of agents had any authority to make contracts, but on the other hand the evidence is undisputed that his authority was limited to the appointment and supervision of agents and the production of applications for membership. And likewise, the evidence is uncontroverted that the sole and only person authorized to issue and sign certificates of membership on behalf of the company was the secretary-treasurer. Under such a state of facts the superintendent of agents could not make contracts and his uncommunicated knowledge obtained after the death of the applicant could not be imputed to the company as a waiver of the express conditions of the application and certificate that they, together with the by-laws, would constitute the contract. The application provided that it was subject to approval by the board of directors, and that the association would not be bound by any act, statement or representation by any agent or other person not contained in the application. The certificate provided that it should be void if the applicant was not in good health at the time it was issued. At the time the application reached defendant's office and at the time the certificate was issued the subject-matter of insurance had ceased to exist. The life which it was proposed to insure was not in being. Whether there was a contract of insurance must be determined in view of the date of the death. The rights of the parties were fixed before the superintendent of agents obtained knowledge of the death. He had no power to make contracts and could not by waiver make a contract that did not otherwise exist.

Waiver by way of estoppel could not be predicated on the facts of this case. At the time the application was presented to the only authorities authorized to accept it, and at the time the certificate was issued by the only person authorized to issue it, the subject of insurance did not exist and it was not possible for defendant to indemnify against the future loss of a life then extinct. It was not possible then for defendant to so conduct itself as to mislead the applicant or the beneficiary to their prejudice. There was no basis for estoppel, and no contract could be found to exist except upon a showing of facts evidencing acts and conduct of defendant itself sufficient to create a contract by a pure and complete waiver based on a valuable consideration and containing all the elements of a valid

contract. The burden was upon plaintiff to show this and there is no evidence of it.

The conditions of the certificate were not met and could not be met at the time. The person named for insurance was no longer alive and could not be made a member of the association. The life to be insured had expired and there was nothing to which the certificate could apply. A species of waiver is constantly applied as a remedy to prevent forfeiture of benefits under an existing contract, but such doctrine is not so effectual as to accomplish the impossible. Such class of waiver presumes the existence of a contract. There must be a contract before there could be a forfeiture, and there must be forfeiture to be waived before there is any office for such waiver to fill. Certainly it could not be contended reasonably that this kind of waiver is so effectual and creative in multiple results as to raise both a contract and a forfeiture where none previously existed and then remove the forfeiture and accomplish the result of a sound contract. But such seems to be the result for which respondent contends. Contracts are not created in this novel manner and the achievement of the impossible is beyond reason and the reach of waiver also. For waiver to be effective in this case it must be such as to amount to the creation of a contract which did not theretofore exist. We quote from Carpenter v. St. Joseph Life Insurance Co., 212 Mo. App. 1. c. 343, 246 S. W. 623, 626, which appears to be particularly applicable to the subject in hand.

"There being no contract whatever unless the defendant created one by waiver, it necessarily follows that the waiver plaintiff must show in this case, is one of strict, *pure* waiver, which is the 'intentional relinquishment of a known right.' [27 R. C. L. 904.] A waiver by estoppel will not do, for in this case, as has been stated, there is no waiver by estoppel. The terms "waiver" and "estoppel" are, in the law of insurance, often used interchangeably, but almost invariably when this is done the elements of an estoppel appear. [27 R. C. L., sec. 2, p. 904.] Slight circumstances indicating an election to waiver a *forfeiture* may be sufficient to create a waiver in the nature of an estoppel, though the acts may be such as are insufficient to create a strict technical estoppel, since forfeitures are not favored. [14 R. C. L., sec. 257, p. 1181.] But this case is not one of forfeiture, and, as stated, there are no elements of estoppel. The waiver herein must be such as will *create a contract* since none exists without it. It must, therefore, be such a waiver as contains all the elements of a valid contract. [14 R. C. L. 1155.]"

The same case demonstrates why the soliciting agent and the supintendent of agents could not by waiver create a contract that did not otherwise exist. [212 Mo. App. 1. c. 342.]

That there was no contract of insurance and no basis for estoppel and no sufficient showing of a complete contract by waiver in the case at bar finds support in many authorities in addition to the above, some of which are: Kirk v. Woodmen of the World, 169 Mo. App. 449, 155 S. W. l. c. 42; Misselhorn v. Life Association, 30 Mo. App. l. c. 598, 600; Noyes v. Phoenix Mutual Life Insurance Co., 1 Mo. App. 584, 592; Gallop v. Royal Neighbors, 167 Mo. App. 85, 150 S. W. 1118, 1119; Rhodus v. Kansas City Life Insurance Co., 156 Mo. App. 281, 284, 137 S. W. 907, 908, and cases cited; Hammers v. National Life & Accident Ins. Co., 292 S. W. 1064, 1065; Erickson v. Missouri State Life Ins. Co., 256 S. W. 108, 109; Continental Insurance Co. v. Stratton (Ky.), 215 S. W. 416, 417; Smith v. Woodmen of the World, 179 Mo. l. c. 135; Harvey v. Grand Lodge, 50 Mo. App. l. c. 476, 477; Hubbard v. Mutual Reserve Fund Life Assn., 80 Fed. 681, 683.]

In the case of Doerr v. National Fire Ins. Co., 315 Mo. l. c. 274 et seq., the court adopted the following quotation:

"Waiver depends on intention in so far as it is a distinct doctrine of the law not shading into estoppel. Waiver depends upon what one intended to do himself; estoppel, rather upon what he caused his adversary to do. There may be a valid waiver of rights of a certain kind (that is, formal as distinguished from substantial rights) without a consideration, showing that waiver differs from contract. . . . But where substantial rights are involved, we apprehend a waiver must be supported by a consideration to be valid."

It is also held that any direct act in the nature of waiver, such as a promise to pay after knowledge of the breach, must be based upon a good consideration, or else the elements of a technical estoppel must be present.

Under the facts and circumstances in evidence it necessarily results that there was no original contract and no new contract created by a waiver containing all the elements of a contract. There could be no liability on the ground predicated in the instructions.

Respondent contends that even though there be error in the manner in which the case was submitted, plaintiff was nevertheless entitled to an instructed verdict and the judgment should be affirmed because (1) defendant retained the membership fee; (2) that defendant was limited in its defense to the ground assigned in its letter refusing payment, and (3) that plaintiff was entitled to recover on the ground of negligence and delay on the part of defendant in acting on the application. These reasons are insufficient.

With reference to defendant's alleged retention of the membership fee, this could have no effect save only to operate, if possible, as an estoppel against defendant to defend against plaintiff's case be-

cause, by retaining a premium or part thereof, defendant assumed an attitude wholly inconsistent with its contention that no contract of insurance ever came into existence. We do not think defendant's course lays it open to the charge of any such inconsistent attitude. The answer pleaded that defendant "has heretofore tendered and now tenders to plaintiff and offers to pay into court for her" the said $6 paid by Mitchell; and the evidence shows that it deposited said money in court and with the clerk during the trial. While no formal or technical tender was made prior to the trial, yet an *offer to return*, if refused, will obviate the necessity of a formal tender, for no one is required to go through a ceremony which is known to be wholly futile. Defendant sought to introduce all the facts surrounding the offer to return said money but, on plaintiff's objection, this evidence was excluded. Defendant is not, therefore, occupying an inconsistent attitude with reference to the premium or membership fee.

Besides, this is a case where concededly the application was received and the policy was issued *after* the so-called "insured" was dead and in his grave. As hereinbefore stated, there never was a contract of insurance under the policy because the subject-matter of the alleged insurance—i. e., the life of plaintiff's husband—was not in existence at the time the so-called contract was made. In other words, there was *no cause of action* under the policy in plaintiff at any time. Now, "estoppel does not in itself give a cause of action. Its purpose is to preserve rights already acquired and not to create new ones." [State v. Mutual Life Ins. Co., 175 Ind. 69, 82; Berry v. Mass. Bonding, etc., Co., 203 Mo. App. 459, 468; McLain v. Mercantile Trust Co., 292 Mo. 114, 122, ,237 S. W. 506.] Consequently, the claimed so-called estoppel, under the peculiar circumstances of this case, if given any effect at all, would, by preventing defendant from making any defense, allow plaintiff to recover on a cause of .action which she does not have and never did have. So that, in no view, was plaintiff entitled to a directed verdict as claimed by her.

Both of the other propositions, if true, involve a question of fact for the jury to settle, and if the issues were so limited plaintiff was not entitled to recover under the evidence as a matter of law. We do not concur in the proposition that defendant in this case was limited in its defense to the reason assigned in the letter for cancellation of the certificate. The general rule, that if an insurance company with full knowledge of all the facts in a particular case denies liability for a stated reason it cannot thereafter set up other defenses, has its limitations and exceptions which are as clearly established as the rule itself. One of the conditions for the application of the rule is that the insured or the beneficiary has been misled to

708

his prejudice on account of the position of the company. The rule and its limitations are stated in American and English Annotated Cases, Vol. 20, p. 438, and the authorities are there collected. In the case at bar there is no averment or proof that plaintiff was misled by the letter denying liability.

Negligent delay was not established as a matter of law; neither was it the basis of the cause of action alleged in the petition. From the quoted portion of the pleading, it is obvious that the only cause of action stated is one based on an executed contract and not upon an implied undertaking arising from the failure of defendant to make a contract within reasonable time. The petition states that Mitchell became a member of defendant association April 8, 1930, and that the association then and there agreed to issue to him a certificate of membership, and on the 16th day of April, accepted the application as to its date and issued a certificate, and "that the said J. Ralph Mitchell died on the 13th day of April, 1930, while a member in good standing in said association." The averments are insufficient to constitute a cause of action on the theory of negligence, and such cause of action, if stated, would be wholly incongruous and inconsistent with the cause of action which is in fact alleged. We do not say that plaintiff had no cause of action on the theory of negligence, nor that under proper pleading and proof such a case may not have been sustained. Even though it be considered that such a cause of action is alleged, still under the proof in this case there would remain a question of fact for the jury to determine. Plaintiff was not entitled to an instructed verdict and we cannot approve the judgment on that theory. It results that the judgment in this case should be reversed. The commissioner so recommends. *Campbell, C.*, concurs.

PER CURIAM:—The foregoing opinion of Boyer, C., is adopted as the opinion of the court. The judgment is reversed. *Trimble, P. J.*, and *Arnold, J.*, concur; *Bland, J.*, concurs in the result.