HENRY LINENSCHMIDT, Appellant, v. CONTINENTAL CASUALTY COMPANY, a Corporation, (Garnishee) Respondent, L. A. HOFMANN, Defendant.—No 40093.—204 S. W. (2d) 295.

Division Two, July 14, 1947.

Motion for Rehearing or to Transfer to Banc Overruled, September 8, 1947.

*Glover E. Dowell, Andrew J. Reis* and *N. Murry Edwards* for appellant.

*Fordyce, White, Mayne, Williams & Hartman* and *F. W. Schwarz* for respondent.

916

BOHLING, C.—This is a garnishment proceeding. Plaintiff had a verdict. and judgment against the garnishee, which the court, proceeding under Laws 1943, p. 387, Sec. 113,* later set aside and followed with a judgment for the garnishee. Plaintiff thereupon appealed.

In the principal action Henry Linenschmidt was plaintiff and L. A. Hofmann and Heath Guaranteed Heat Company, Inc., a corporation (hereinafter sometimes designated Heath Company), were defendants. Plaintiff sued in St. Louis City and sought damages for injuries sustained October 22, 1941, when an automobile operated by Hofmann collided with a wagon and team driven by plaintiff. The

*Section references are to R. S. 1939, unless otherwise indicated. References to the General Code for Civil Procdure (thus: Code Sec.) are found in Laws 1943, pp. 353 to 397, which Code appears in 3 Mo. R. S. A. with the sections numbered 847.1, 847.2 et seq., the decimal number corresponding with the section number appearing in Laws 1943.

record shows that at the close of plaintiff's case an instruction was given to find in favor of defendant Heath Guaranteed Heat Company, Inc., and that thereupon plaintiff took an involuntary nonsuit as to said defendant, with leave to set the same aside. The jury returned a verdict in favor of plaintiff and against defendant Hofmann for $7,500. Plaintiff's motion to set aside the involuntary nonsuit as to defendant Heath Company was overruled. Plaintiff had judgment against Hofmann for $7,500 but his cause of action against Heath Company was dismissed. In this garnishment proceeding Hofmann testified that when plaintiff was injured he was operating his automobile in the stoker business of the Heath Company, proof that must have been wanting in the main action. Thereafter, Hofmann was adjudged bankrupt, scheduling the judgment. No payment was ever made on the judgment.

At the time of plaintiff's injury there was in effect automobile policy No. CA-3,165,319 of the Continental Casualty Company, a corporation, issued to the Heath Company and protecting against liability for bodily injuries and property damages. Proceedings were had in connection with plaintiff's $7,500 judgment against Hofmann which resulted in the Continental Casualty Company being summoned as garnishee; and the instant controversy is whether said policy covers the liability of defendant Hofmann under the judgment to plaintiff. Additional facts will be developed under the points discussed.

Plaintiff presents a preliminary issue before reaching the merits. The trial of the garnishment resulted in a verdict on May 16, 1946, in favor of plaintiff and against the Continental Casualty Company for $12,006.75, embracing the original judgment, costs, et cetera; and on said day the court ordered the garnishee to pay said sum into the registry of the court within ten days (Sec. 1567). On May 24 the garnishee (proceeding under Code Sec. 113, supra) filed its motion to set aside the verdict and judgment and for judgment in accordance with its motion for a directed verdict, and also a motion for new trial. On July 8, the garnishee having defaulted in payment, judgment, upon oral motion of plaintiff, was "rendered for plaintiff and against garnishee" for said $12,006.75 (Sec. 1579), in conformity with the order of May 16. On July 9 the garnishee refiled its motion for judgment in accordance with its motion for a directed verdict and refiled its motion for a new trial. On July 25 the court sustained the garnishee's motion for judgment in accordance with its motion for a directed verdict, reopened said judgment under Sec. 113, supra, vacated the verdict and judgment theretofore entered, rendered judgment in favor of the garnishee and against plaintiff, and overruled the garnishee's motion for new trial. Plaintiff's motion to set aside this action of the court was overruled July 30, and plaintiff appealed.

Plaintiff contends the trial court exceeded its jurisdiction in thus proceeding. Our General Code for Civil Procedure (Laws 1943, p. 353 et seq.) provides that judgments are to be entered as of the day of the verdict and motions for new trial are to be filed within ten days after entry of the judgment (Code Sec. 116) ; and that a motion to set aside a verdict and judgment and enter judgment in accordance with a motion for a directed verdict is to be filed "within 10 days after the reception of a verdict" (Code Sec. 113). Plaintiff points out that the rendition of judgment on the day of the verdict would be premature under our garnishment procedure, which contemplates an order by the court directing the garnishee to pay the money "to the sheriff or into court, at such time as the court may direct" (Sec. 1567) and, upon compliance, stand discharged (Sec. 1566), but upon default, "enter up judgment against the garnishee" (Sec. 1579). Walkeen Lewis Millinery Co. v. Johnson, 130 Mo. App. 325, 328, 109 S. W. 847, 848; Panagos v. General Cigar Co. (Mo. App.), 268 S. W. 643, 645[3] ; Gilbert v. Malan, 231 Mo. App. 469, 484(9), 100 S. W. 2d 606, 616[16]. Plaintiff's argument is that the garnishee's motion of May 24 for a judgment in accordance with its motion for a directed verdict was ineffectual because the judgment had not been entered at that time and was not entered until July 8; and that the refiling of said motion on July 9 was not timely because Code Sec. 113 required it to be filed "within 10 days after the reception of a verdict"; that is, within ten days after May 16.

The article of the code relating particularly to "Garnishments" (Ch. 8, Art. 5, Secs. 1560-1589) contains no specific provision respecting our previous practice of a request for a peremptory instruction or the old common law "demurrer to the evidence" or motions for new trial, which were covered by general provisions of the code and the law. Consult Diamond Rubber Co. v. Wernicke, 166 Mo. App. 128, 130, 148 S. W. 160, 161[4, 5]. Our new Code Sec. 2 provides: "This code . . . . shall govern the procedure" in trial and appellate courts "in all suits and proceedings of a civil nature whether cognizable as cases at law or in equity, unless otherwise provided by law. It shall be construed to secure the just, speedy, and inexpensive determination of every action." Demurrers to the evidence and requests for peremptory instructions are abolished and a motion for a directed verdict substituted therefor by Code Sec. 112 and Code Sec. 113, here involved, provides, so far as material: "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his mo-

tion for a directed verdict . ·. . A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. . . . '' There being no specific provision respecting requests for peremptory instructions or demurrers to the evidence in the article relating to garnishment procedure, our new Civil Code, under Code Sec. 2, supplanted the former procedure and made Code Sec. 113 applicable.

Reading Secs. 1566, 1567 and 1579 together, the judgment contemplated by Sec. 1579 is the ''final judgment'' against the garnishee, being specifically so designated in Sec. 1566, and the ''order'' contemplated by Sec. 1567, in the event the facts establish liability on the part of the garnishee, determines plaintiff's right. to recover and operates as a preliminary or interlocutory judgment, the final judgment to be entered in the event the garnishee fail to discharge the obligations imposed. 3 Black. Comm. 397. The motion referred to in Code Sec. 113 is directed against the verdict and strikes at ''any judgment entered thereon'' as provided in said section; i. e., the interlocutory judgment contemplated under Sec. 1567 and the final judgment contemplated under Sec. 1579. Section 113 explicitly states that a court, in not sustaining a motion for a directed verdict at the close of all the evidence, ''is deemed to have submitted the action to the jury subject to a later determination of· the legal questions raised by the motion.'' The instant garnishee exercised due diligence and timely filed its motion striking at the verdict under Code Sec. 113, embracing under said section, the interlocutory ''judgment entered on the day of the verdict'' (consult Code Sec. 116) as well as the final judgment against the garnishee of July 8 under Sec. 1579, said motion carrying over and operating against the ''final judgment''; each said judgment being within the phrase ''any judgment entered thereon'' of Sec. 113; i. e., entered on the verdict. ·Sections 1579 and 1567 of the article on Garnishments thus harmonize and fuse into our new Code as intended by the General Assembly. (Consult Code Sec. 126 and Rule 3.24 respecting final judgments for the purpose of an appeal.)

 Plaintiff contends the garnishee's liability under the contract of the insurance covered L. A. Hofmann as an insured and plaintiff may hold the garnishee under his judgment against Hofmann although he failed to make a submissible case against the Heath Company in the principal action. The issue is one of law, determinable from all the provisions of the contract of insurance, which includes the policy proper and an attached ''Employers' Non-ownership Liability'' endorsement; each dated December 19, 1940. One of the conditions of

the policy was that it contained all the agreements between the named insured and the Company or any agent.

Page 1 of the policy is designated "Declarations" and embraced several "Items" (the italicized portions being filled in):

"Item 1. Name of Insured *Heath Guaranty Heat Company, Inc., St. Louis, Missouri.* The named Insured is *Corporation.* The occupation of the named Insured is *Stokers.* The automobile will be principally garaged and used in the above town, county and state, unless otherwise specified herein.

"Item 2. . . .

"Item 3. The purposes for which the automobile is to be used are *See Schedule Attached.*

"Item 4. (a) . . . (b) The named Insured is the sole owner of the automobile: (b) *See Schedule Attached.*

"Item 5. Description of automobile. [Here are columnar spaces to fill in with the year and model, the trade name and other information concerning the automobile, all left blank except for the typewriting:] *See Schedule Attached.*

"Item 6. [Here, in columnar spaces, are shown the "Limits of Liability" on "Bodily Injury" and "Property Damage" and the "Premium" charged, totaling $96.74.] . . ."

Page 2 of said policy is the insuring agreement, and provided, so far as material:

"The Continental Casualty Company, . . . (Herein called the Company) Does Hereby Agree with the insured, named in the declarations made a part hereof, . . . subject to the limits of liability, exclusions, conditions and other terms of this policy:

"1. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages . . . , because of bodily injury . . . , sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile.

"Coverage B—[Provides insurance against property damage under like conditions.] . . .

"III. Definition of 'Insured.' Except where specifically stated to the contrary, the unqualified word 'insured' wherever used includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided the declared and actual use of the automobile is 'pleasure and business' or 'commercial,' each as defined herein, and provided further the actual use is with the permission of the named insured. . . .

"V. Automatic Insurance for Newly Acquired Automobiles. If the named insured who is the owner of the automobile acquires ownership of another automobile, such insurance as is afforded by this policy

applies also to such other automobile . . . if it replaces an automobile described in this policy . . .

"VI. Policy Period, Territory, Purposes of Use. This policy applies only . . . while the automobile . . . is owned, maintained and used for the purposes stated as applicable thereto in the declarations."

Page 3 of the policy relates to "Conditions" and, in part, read:

"1. Automobile Defined—Two or More Automobiles. Except where specifically stated to the contrary, the word automobile wherever used in this policy shall mean the motor vehicle . . . described herein . . . ."

Condition "9. Action Against Company" provides that a person, having obtained a judgment within the policy provisions, may recover "under the terms of this policy in the same manner and to the same extent as the insured. . . . "

To this policy was attached an endorsement, entitled "Employers' Non-ownership Liability—Class 1 and Class 2" and, so far as material, provided:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability applies with respect to non-owned automobiles, subject to the following provisions:

"1. Definitions. The words 'non-owned automobile' wherever used in this endorsement shall mean any land motor vehicle, trailer or semi-trailer not owned in whole or in part by, or registered in the name of, or hired by the named insured . . .

"2. Application of Insurance.

"(a) The insurance applies only to the named insured.

"(b) The insurance applies only to the use, by any person other than the named insured, of any non-owned automobile of the private passenger type in the business of the named insured as stated in the declarations . . .

"5. Premium. The advance premium for the insurance is based on the application of the rates stated in the schedule to the persons in Class 1 and to the number of persons in Class 2.

"Class 1. Class 1 consists of the following persons, provided their usual duties in the business of the named insured include the use of non-owned automobiles of the types described in paragraph 2 hereof:

"(a) [Subdivisions (a) and (b) embraced employees, including officers, compensated for the use of the automobiles and direct agents or representatives of the named insured.] . . .

"Class 2. [Included all employees not in Class 1.] . . .

"The named insured shall pay the company at the effective date of the policy the advance premium stated in the schedule. The earned premium shall be computed at the end of the policy period. [Here follows a provision for the subsequent adjustment of the advanced

and earned premiums, the named insured to pay any additional earned premiums.] . . .

[Paragraphs numbered 6 and 7 relate to records covering the persons within Class 1 and ▮▮▮ Class 2 to be maintained by the named insured, furnishing copies of the same to the company and the inspection and audit of the records by the company.]

"8. Declaration. The named insured declares that the schedule contains a complete list of all persons within the definition of Class 1 . . . "

The "Schedule" in columnar form, showed five named individuals under "Class 1 Persons," including "L. A. Hofmann," with his "Headquarters" shown as "St. Louis. Mo. & Rural Missouri" and "Advance Premiums" of "$16.10" and "$3.00" under "Bodily Injury" and "Property Damage" liability, respectively; a total premium of $95.50 on all "Class 1 Persons" and $1.24 on all "Class 2 Persons."

Insurance contracts embrace two basic features: The parties protected and the subject matter covered. The Heath Company was the only contracting insured. It sought protection against liability in the operation of non-owned automobiles by its employees in its business. This was accomplished by using an ordinary form automobile policy and attaching an "Employers' Non-ownership Liability" endorsement thereto.

Plaintiff stresses the omnibus clause, Agreement III of the policy, and argues that the insurance covered Hofmann personally because he was one of the five employees named in the "Non-ownership" endorsement and was using the automobile in the business of and with the permission of the Heath Company at the time plaintiff was injured. The omnibus clause afforded protection when others than the named insured used the automobile described in the policy; that is, "while using the automobile . . . provided further the actual use is with the permission of the named insured." The insurance applied, as contemplated throughout the policy proper, to "the automobile"; that is, "the word automobile . . . shall mean the motor vehicle . . . described herein . . . " (See Condition 1; also Declaration Items 1, 4, 5, and Insuring Agreements V, VI, supra) whether used by the named insured or by others with his permission. Although reference is twice made to "See schedule attached" in the "Declarations," there is no description of any automobile, whether owned by Heath Company or by Hofmann, in the policy proper or in the endorsement. The "schedule" is restricted to listing the names of the employees within the endorsement, stating their headquarters and the advance premiums incurred. Hofmann's operation of an automobile classifying within Clause 2(b) of the endorsement in the business of the named insured was within the endorsement regardless of his ownership of the automobile. The

omnibus clause covered owned automobiles, including their use by another with the permission of the "named insured." Hofmann, as owner, had dominion over the automobile here involved and the legal right to use it. A "non-owned automobile" within the endorsement did not include one "hired by the named insured." In these circumstances Hofmann, the owner, was the person who gave the permission for the use of the automobile. Any attempted permission by Heath Company would be a mere uttering of words and of no effect without Hofmann's permission. Whitney v. Employers' Ind. Corp., 200 Iowa 25, 202 N. W. 236, 239[5]; Giroud v. New Jersey Mfrs. Cas. Ins. Co., 106 N. J. L. 238, 148 Atl. 790, 791[2]. If the omnibus clause covered non-owned automobiles what occasion existed for the "Employers' Non-Ownership Liability" endorsement? The endorsement was restricted to named employees and restricted to using automobiles in the business of but not owned by the named insured, a much more limited coverage than would have existed under the policy proper if non-owned automobiles were covered because the policy covered all automobiles within its provisions when used with permission of the named insured whether in his business or otherwise.

The "Non-ownership" endorsement strengthens this conclusion. It provided a coverage not within the policy and necessary to protect the named insured under the doctrine of respondeat superior when automobiles not owned by it were used in its business. Such endorsements prevail over the policy provisions, although we find no conflict here. Consult Moore v. Perpetual Ins. Co., 16 Mo. 98; 44 C. J. S. 1206, 1207. The terms used throughout the endorsement are exclusive of applying the insurance to the employees personally and inclusive of applying it only to the named insured—the employer, the Heath Company. Thus: The introductory clause stated the insurance "applies with respect to non-owned automobiles" and Clause 1 defined "non-owned automobile" to "mean any land motor vehicle . . . not owned . . . by the named insured." This fixed the subject matter, the automobile, covered. Clause 2(a) stated: "The insurance applies only to the named insured." If "scheduling" an employee made him a named insured, the purpose of the endorsement would be defeated as it applied only to automobiles not owned by the named insured. The insurance is limited to the Heath Company. Plaintiff ignores the effect of Clause 2(a). Clause 2(b) restricted the coverage of the automobile to only its use in the specified business of the named insured by the specified employees. Clause 4, not quoted above, states: "The insurance shall be excess insurance over any other . . . insurance available to the named insured . . . ." Those using non-owned automobiles are designated as employees, officers, agents and representatives of the named insured. Clause 5 and Schedule. The named insured paid the premium. Clause 5. Hofmann did not pay the premium. The named insured maintained

the records and permitted the inspections and audits called for by clauses 6 and 7 mentioned hereinbefore. Throughout reference is to the named insured, the employer, the Heath Company, as the insured and the employees named in the endorsement were not personally covered.

Fertig v. General Acc. F. & L. Ins. Co., 13 N. Y. S. 2d 872, 878 [11-13] (affirmed without opinion, 54 N. Y. S. 2d 466) is closer on the facts than other cases cited and reached a like conclusion, citing Whitney and Giroud cases, supra.

The last ground upon which the garnishee was considered not liable in Loughran v. Rea, 212 Wis. 634, 250 N. W. 389, 390, was that the ''Employers' Non-ownership Liability'' insurance, in express terms, did not cover the liability of any person other than the named insured.

Although the provisions of the policies involved differ, what is said in Webster v. Inland Supply Co., 287 Ill. App. 567, 5 N. E. 2d 849, 853[6, 7], on plaintiff's stressing the meaning of the word ''insured'' in the omnibus clause and thereafter in the endorsement and the inclusion of plaintiff's name in the schedule of employees in the endorsement is in harmony with our conclusion herein.

Plaintiff's cases are distinguishable. In Lajoie v. Central West Cas. Co., 228 Mo. App. 701, 718(14), 71 S. W. 2d 803, 814[7], and Rainwater v. Wallace (Mo. App.), 169 S. W. 2d 450, 455[7] (sustained in 351 Mo. 1044, 175 S. W. 2d 450), the automobiles involved were automobiles specifically described in the policy and were being used with the permission of the named insured. In the Lajoie case the original automobile covered by the policy had been sold by the named insured and an automobile owned by his son, who lived with him, substituted for the original automobile by a rider attached to the policy. So, for the purposes of the policy, the named insured owned the automobile.

In La Blanc v. New Amsterdam Cas. Co. (La. Ct. Apps.), 8 So. 2d 83, 85 (sustained La. Sup. Ct., 13 So. 2d 245, 247), the employee paid the premium for the coverage under the ''Non-ownership'' endorsement. The Heath Company, and not Hofmann, paid the premium in the instant case. The instant endorsement provides, with respect to the person protected, that ''the insurance applies only to to the named insured''; that is, the Heath Company. There was no like provision in the Le Blanc policy. In Louisiana the insurance carrier may be sued along with the insured and a sufficient reason for holding the insurer in the La Blanc case was the liability of the employer, the named insured, under the doctrine of respondeat superior whether the employee named in the ''Non-ownership'' endorsement be considered personally protected or not. (See concurring opinion, 13 So. 2d l. c. 249.) The court considered the omnibus clause covered automobiles owned by the named insured and the provisions of the ''Non-ownership'' endorsements controlling over policy

provisions. The case, read as a whole, is not an authority for plaintiff under the instant facts.

In United Roofing Co. v. Independent Bonding & Cas. Ins. Co., 9 N. J. Misc. 575, 155 Atl. 140, the named insured, who had paid a judgment recoverable under circumstances within our view of the omnibus clause, sought and had reimbursement from its insurer. This is not the instant case. Plaintiff's other cases also differ on the facts involved. Liberty Mutual Ins. Co. v. Hathaway Baking Co., 306 Mass. 428, 28 N. E. 2d 425, and Wilson v. Marshall, 277 Mich. 583, 269 N. W. 607.

Plaintiff contends the garnishee waived its rights and is·now estopped to say that Hofmann was not personally covered by the policy. The contention is based upon the garnishee taking charge of the investigation and defense of Heath Company and Hofmann. The garnishee paid the attorney Hofmann employed in a criminal action growing out of the collision and the attorneys representing Hofmann in the two civil actions (totaling around $850) and also reimbursed Hofmann for expenses connected with the criminal charge and the repair of his automobile. The civil actions were against Heath Company and Hofmann. The first was filed in Montgomery county and thereafter dismissed. The second was instituted in St. Louis City, the main action to this proceeding. However, on October 19, 1943, in connection with the first civil action and after garnishee's representatives explained to him that the insurance did not cover him personally, Hofmann executed a letter to the garnishee stating he understood such fact; that he had employed an attorney; that he understood the garnishee was willing to pay his attorney fees; that such action on the part of the garnishee was with the understanding it was not an admission of liability, and that it should not be construed to place any liability on the garnishee with respect to any other expenses, disbursements, or judgments against Hofmann. Again, after the dismissal of the first and the institution of the second civil action, Hofmann executed a like letter to the garnishee on December 22, 1943. (Consult with respect to a reservation of rights, 45 C. J. S. 686, 689.) In some of plaintiff's cases the judgment creditor proceeded against the judgment debtors' insurer in a garnishment proceeding to collect a judgment within the provisions of the insurance contract. Cowell v. Employers' Ins. Corp., 326 Mo. 1103, 34 S. W. 2d 705; Graff v. Continental Auto Ins. Co., 225 Mo. App. 85, 35 S. W. 2d 926. In others, the judgment debtor sued his insurer, having satisfied the judgment. Friedman v. Maryland Cas. Co., 228 Mo. App. 680, 71 S. W. 2d 491; Rieger ·v. London Guarantee & Acc. Co., 202 Mo. App. 184, 215 S. W. 920; National Battery Co. v. Standard Acc. Ins. Co., 226 Mo. App. 351, 41 S. W. 2d 599; Royle Mining Co. v. Fidelity & Cas. Co., 126 Mo. App. 104, 103 S. W. 1098, and, second appeal 161 Mo. App. 185, 142 S. W. 438. The terms

waiver and estoppel frequently have been used interchangeably in insurance law. An insurer may waive a defense by his conduct and become estopped to thereafter assert it. Waiver and estoppel operate, when applicable, to preserve rights already acquired, the prevention of forfeitures or avoidance of duties, and not to create new rights, new causes of action. Plaintiff's cases involved the named insured or parties authorized in law to enforce his rights under the policy against the insurer. But Hofmann, the judgment debtor here, was not personally entitled to the protection of the instant insurance contract and plaintiff may not thus create a new contract of liability against the insurer. Berry v. Massachusetts Bonding & Ins. Co., 203 Mo. App. 459, 467, 221 S. W. 748, 751; McLain v. Mercantile Trs. Co., 292 Mo. 114, 122, 237 S. W. 506, 508; Mitchell v. American Mut. Ass'n., 226 Mo. App. 696, 704, 46 S. W. 2d 231, 236[2]; Shepard v. Metropolitan L. Ins. Co. (Mo. App.), 99 S. W 2d 144, 145; Rosenberg v. General Acc. F. & L. Assur. Co. (Mo. App.), 246 S. W. 1009, 1012; C. E. Carnes & Co. v. Employers' Liability Assur. Corp., 101 F. 2d 739, 742[11]; Macomber v. Minneapolis F. & M. Ins. Co., 187 Wis. 432, 204 N. W. 331, 332[3].

The judgment should be and is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.