SAM FRIEDMAN, RESPONDENT, v. MARYLAND CASUALTY CO., APPELLANT. —71 S. W. (2d) 491.

Kansas City Court of Appeals. February 19, 1934.

*Trusty & Pugh* for respondent.

*Harris & Koontz* for appellant.

TRIMBLE, J.—Respondent sued defendant on a policy of indemnity insurance.

The case was submitted on an amended petition which, after the usual formal allegations as to the incorporation and business of defendant and its authority to carry it on in Missouri, alleged, in substance, that in May, 1925, defendant insured plaintiff to the extent of $5000 against liability and damages resulting to him from the operation of a 1924 one-ton Ford truck during the remainder of the year 1925 and until June 20, 1926; that plaintiff paid the premium, and the policy was in force at the time complained of; and said policy insured plaintiff for damages and loss sustained by him by reason of the accident thereinafter complained of, to-wit:

"On or about July 21, 1925, said automobile truck was being driven for and in the operation of plaintiff's business and while the same was passing over an intersection in Kansas City, Missouri, at Benton Boulevard and Forty-fourth Street, it was involved in a collision with a motorcycle being driven by one Herschel Bates and said Bates was injured;"

That said collision was reported to defendant and all conditions of the policy were complied with; that said Herschel Bates presented his claim against plaintiff for damages; that the claim was turned over to and accepted by defendant and was thereafter handled and controlled by defendant; that Bates filed suit against plaintiff, and

petition and summons were turned over to and accepted by defendant and thereafter the defense thereof was handled and controlled by defendant, and the right 'to settle said cause of action was controlled by it;

That after said collision and injury to said Bates, defendant learned that the driver of plaintiff's said truck was under eighteen and over sixteen years of age, and defendant then contended that, as said driver was acting as a chauffeur and was under eighteen years of age, at the time of said accident, he could not become a licensed chauffeur, and for that reason defendant could not be held liable under the policy;

That if defendant had any such defense, it was waived and abandoned by taking charge of the defense of said suit and the control thereof, and estopped itself to assert that it was not liable;    .

That defendant, after it knew plaintiff's driver was under eighteen years of age, continued to control the defense of said suit, the preparation for trial thereof and the question of settlement under the provisions of the policy; and defendant told plaintiff that it would do so, and that it would *assume the responsibility* of the preparation and trial and the result thereof, and *prevented the plaintiff* herein from *settling the Bates suit for $500 or for any other sum,* and told plaintiff that, under the terms of the policy, defendant had the right to deny liability if plaintiff made any settlement of the Bates case without the insurer, defendant's consent; and continued to control the defense and prevent any settlement of said claim, until plaintiff was compelled to pay the judgment rendered thereon in order to avoid an execution and further damages and loss, and save his property; and plaintiff was thereby damaged to the amount stated herein;

That there was, and is, no consideration for the claim of defendant that it is not liable under the policy because said driver was under eighteen years of age;

That said Bates' lawsuit was tried and judgment for $2500 and costs was rendered against plaintiff, defendant in that suit, and an appeal was taken by defendant therein (plaintiff herein) from said judgment, but the same was affirmed in the appellate court and said judgment became final, and plaintiff called upon defendant to pay said judgment and costs, but defendant repudiated its indemnity insurance contract and refused, and now refuses, to pay said judgment;

That plaintiff paid out the sum of $2792.70, in satisfying said judgment and costs, on July 30, 1928; and by reason of defendant's refusal, it has been guilty of vexatious delay.

Wherefore, judgment was prayed for $207 attorney's fees and for $2792.70 with interest from said July 30, 1928.

Defendant, in its amended answer to the above petition, admitted

its incorporation and license to do business in Missouri, admitted the issuance of the policy sued on, and that it was duly in force, according to its terms, at the times alleged; admitted the collision with Bates of plaintiff's truck (driven in the operation of plaintiff's business); admitted that said Bates was injured and that he obtained a judgment therefor for $2500 and costs; but denied generally every other allegation.

Defendant's amended answer then set up two provisions of the policy, as follows, to-wit: •

"This policy does not cover while the said Automobile or Automobiles are (a) being used for . . ., or (b) being operated by any person under the age limit fixed by law, or under the age of sixteen years in any event, . . ."

"The Company is not responsible for any settlements made nor for any expense incurred by the Assured unless such settlements or expenditures are first specifically authorized in writing by the Company, . . ."

"An agent has no authority to change this Policy or to waive any of its provisions, . . . and no waiver of its provisions, shall be valid unless an endorsement be added hereto, signed by the President or Vice-president, and the Secretary or an Assistant Secretary of the Company, expressing such . . . waiver."

Said amended answer further set up that at the time of the injury to Herschel Bates, plaintiff's automobile—

"Was being operated by an employee of plaintiff who was under the age limit fixed by law, in that such employee was a chauffeur and at the time under the age of eighteen years, and that by reason thereof defendant was not and is not responsible to plaintiff by reason of the injury to the said Herschel Bates, or by reason of the judgment referred to in plaintiff's petition."

Defendant's said answer also admitted that the Bates petition and summons were sent to it by plaintiff, and defendant was requested to assume the defense of said Bates' suit and assume liability to the amount of the policy. But said answer set up that it thereupon *denied liability* on the ground that, as *the operator* of plaintiff's automobile, at the time of the collision, *was under the age required by the laws of Missouri,* liability under such circumstances was expressly exempted from the coverage provided by said policy.

That, heretofore, plaintiff brought suit against this defendant in the Circuit Court of Jackson (Grundy?) County, Missouri, upon the exact cause of action herein, which suit was removed by defendant to the District Court of the United States for the Western Division of the Western District of Missouri; that both of said courts were courts of competent jurisdiction and each of them had jurisdiction of the parties and of the subject-matter, and that a copy of the first

amended petition, in said United States District Court, and on which the case was therein tried, is attached hereto as Exhibit A;

That this defendant filed in said United States District Court an answer in which it set up the same defense as in this answer raised, namely, that the policy of insurance did not cover the accident for the reason that the operation of plaintiff's truck, at the time of the collision, was in violation of the Missouri law in the particular hereinabove set out, by reason of which plaintiff was not entitled to recover in said action in the said United States District Court, a copy of which answer is attached marked B;

That the issues in said case in the United States District Court and the issues herein are exactly the same, and the legal question presented in that court and in this, is whether or not an operator, over sixteen and under eighteen years of age, being a hired operator or chauffeur, was operating in violation of the law; that in the United States District Court it was held that the statutes of the State of Missouri governing the operation of automobiles by hired operator or chauffeur *did not apply* to the facts of the case, and a judgment for plaintiff was entered;

That an appeal was taken by defendant from this judgment to the United States Circuit Court of Appeals for the Eighth Circuit which last named court decided that the Missouri statutes hereinbefore referred to, governing the operation of motor cars by hired operators or chauffeurs, *did apply* to the facts in this case as pleaded and presented, and therefore the judgment of said United States Appellate Court is a *final determination* of that question and *adjudicated finally all of the rights of the plaintiff* in this case (the case at bar) to recover upon the cause of action as set out in the pleadings herein.

Defendant, in its amended answer herein, also denied that it ever waived or abandoned any defense it had, or has, to this action, under the provisions of said policy; and defendant further set up that after said collision was reported to defendant, it learned that the operator in charge of plaintiff's car was a chauffeur within the meaning of the Missouri law and was under the age of eighteen years at the time of the said injury to Herschel Bates, by reason whereof the automobile of plaintiff was being operated in violation of law, which condition is not covered by the policy, and the defendant denied any liability under said policy to accept the Bates case, or to defend the same, or to proceed further therein.

Defendant, in said amended answer, further set up that on September 25, 1925, plaintiff entered into a written agreement with defendant whereby it was agreed that defendant would accept the defense of the said Bates action and would stand the expense of such lawsuit, but all rights to both plaintiff and defendant should be reserved, that is, that plaintiff reserved the right to contend that the accident and its damage were covered by the policy, and defendant

reserved the right to contend that by reason of the age of the operator of the car, as hereinbefore stated, the policy did not cover the accident, and, in the event of a recovery by Bates, and an attempt by plaintiff on that account to recover on the policy, each party should be free to assert its contentions; and that by its defense of the Bates action, defendant did not waive any rights which it had;

That, under said agreement alone, defendant took over the defense of the Bates action and defended same to a final decision, and never at any time waived its right to assert that the policy did not cover the accident to Bates, a copy of said agreement or reservation of rights was attached to said amended answer as Exhibit C.

Defendant also set up that it was further provided in said policy that no agent had any authority to change said policy or to waive any of its provisions, and no change or waiver should be valid unless an endorsement be made on said policy signed by the president or a vice-president and the secretary or an assistant secretary of the company, expressing such waiver; that no such waiver of or change in said policy was ever made or signed; and defendant never received any consideration for said alleged waiver, and denies that any waiver was made.

The record does not disclose any reply on the part of plaintiff, but the case was tried as if a general denial had been filed.

After a trial, the jury returned a verdict in plaintiff's favor for $2794 with interest to date (January 13, 1933) at six per cent, $746.47, making a total of $3540.47. Defendant appealed from the judgment rendered thereon.

A number of assignments of errors have been made by appellant, several of which are insufficient to raise any point for an appellate court's consideration. Our Rule 17 provides that, "The brief on behalf of appellant . . . shall *distinctly* and separately allege the errors committed by the inferior court and no reference will be permitted in the oral argument to errors, not thus specified . . ." The Supreme Court's Rule No. 15 is similar, for it provides that, "The brief for appellant shall *distinctly* allege the errors committed by the trial court, and shall contain in addition thereto, (1) . . .; (2) A statement in numerical order, of the points relied on, with citation of authorities thereunder, and no reference will be permitted at the argument to errors not specified; and (3) a printed argument if desired." (Italics in both rules, the author's.) And in Scott v. Missouri Pacific R. Co., 62 S. W. (2d) 834, l. c. 840, a case where, in the appellant's assignment of errors, one of the assignments was merely that "The court erred in giving instruction No. 10 on the part of plaintiffs," but no point against this instruction appeared in appellant's "Points and Authorities," the Supreme Court said that while the general assignment was "good as an assignment of error, *standing alone* it does not comply with our rule 15, in that it

does not *distinctly* allege what the vice in the instruction is nor the point on which appellant relies. Where, as in this case, the particular point relied on is not made in the 'assignments of errors' nor in the 'points and authorities,' it will not be noticed in the printed argument, but will be treated as abandoned because not properly presented for review under our rules,'' (citing cases). (Italics mine.) See also on this point of insufficiency of assignment, Mahmet v. American Radiator Co., 294 S. W. 1014, 1016; Haller v. Kansas City Public Service Co., 17 S. W. (2d) 392, 396. It will be noted that in the case last cited the court says the assignment was not in the assignment of errors nor in the points and authorities nor ''in the argument,'' etc. It would perhaps seem that if the assigned error, with the reasons and authorities in support of the point, *distinctly* and *clearly* appeared in the printed argument, it ought to be sufficient, otherwise the appellate court would refuse to rule on the point (and thereby perhaps deny justice to appellant), merely because the point was made on one page of the brief instead of on another. But be this as it may, the printed argument herein does not distinctly set forth the errors which were insufficiently assigned nor does it present the reasons or the authorities in support of the point appellant probably had in mind. Doubtless, however, the appellant *seriously* relies only upon the points or assignments which we hold were properly sufficient, and which we herein rule upon.

Since appellant did not stand upon its demurrer to the evidence offered at the close of plaintiff's case in chief, but put in its own evidence, such demurrer is *waived,* and only the demurrer at the close of the entire case is for consideration under a proper assignment of error as to it. [Frye v. St. Louis, etc., R. Co., 200 Mo. 377; Riley v. O'Kelly, 250 Mo. 647, 650.]

The asserted error in overruling defendant's second or last mentioned demurrer to the evidence seems to be based upon the contention (1) that the provision of the policy with reference to the operation of the truck in violation of law exempted the defendant from liability, (2) that there was no waiver of this provision because such alleged waiver was not signed by any officer of the company having authority to waive, (3) that even if a waiver were proved it was adding an additional coverage not in the original policy and was without consideration, and (4) (which is in reality the same as the first), that plaintiff failed to produce sufficient evidence to make a case, or rather that plaintiff's own evidence disproves any case for him.

As defendant, under another assignment of error contends that the question of whether the truck was being operated in violation of law at the time of the collision with Bates, had become *res judicata,* by reason of the opinion in the case between the same parties in the United States Circuit Court of Appeals (which, after an independent investigation, the author hereof found reported in 45 Fed. (2d) 369),

it is well to consider this question of *res judicata first,* as that, if found to be well founded, will eliminate everything except the question of waiver or estoppel pleaded against the Insurance Company's defense.

As to the question of *res judicata,* it should be remembered that, legally and for the purposes of the point, the Federal courts are of a *foreign* jurisdiction and their judgments have to be proved, or introduced in evidence. The appellant impliedly conceded this by the methods attempted to be adopted in the trial of the case at bar in the court below, for it introduced the petition on which the case was heard in the United States District Court, the answer of defendant therein, and also a certified copy of an *opinion* in the Federal Appellate Court to which the case was appealed, *but here defendant stopped.* No *judgment* of the Federal Appellate Court was introduced or shown. It would seem that the *judgment* of a court is what renders an issue *res judicata.* While the *opinion* in that case may and doubtless does show what the court *thought* at that time, about the question of whether the policy covered the insurance under the circumstances and the driver's operation of the truck while he was under eighteen but over sixteen, but only the *judgment* could show what the court *did.* So far as appears from what was introduced in evidence by appellant on its point of *res judicata,* all that the said Federal Appellate Court thought should be *done* was to reverse the judgment and remand the cause for a new trial, and this appears only from the opinion. It is true that in Keller v. Summers, 262 Mo. 324, 329, 330, our Supreme Court, in passing on the sufficiency of a "certification" by a judge of a Court of Appeals of a case to that court on the ground of a "conflict," as provided in Section 6 of the Constitutional Amendment of 1884, *held* that, (under said Section 6, "designed to prevent . . . repugnancy of rulings between Courts of Appeals or between them and the Supreme Court, and by 'rulings' it means expositions of the law or the legal reasons upon which the courts rested their judgment on the questions presented"), the word *opinion* was synonymous with *decision.* But this, it would seem, is not a holding that, in making proof of a defense of *res judicata,* it is sufficient to merely introduce an opinion and *omit the judgment.* To permit this to be done would allow the defense of *res judicata* to be established with no showing as to what was done on a motion for rehearing, or modification, or otherwise. The evidence in the case at bar, on the question of *res judicata* in the Federal Appellate Court, did not even show that the opinion became final and was published. The proof merely went to the showing of the opinion and then stopped. For these reasons we hold that the appellant failed in its proof of the plea of *res judicata* even if that plea might otherwise have been good.

But as the defendant, in the case at bar, still pleads that the policy does not cover the collision in question because the plaintiff's truck

was being operated in violation of law, in that the driver thereof was under eighteen years of age, such plea of exemption together with appellant's point thereof, remains to be disposed of. In this case it is *conceded* Bonthank, who was driving plaintiff's truck at the time of the collision, was *over* sixteen but *under* eighteen years of age. And the evidence is that Bonthank was employed in plaintiff's grocery store, as well as others, namely, a man by the name of Kline, plaintiff's wife, Mrs. Friedman, and a man by the name of McGuire. The latter ordinarily delivered the groceries to customers, using the automobile truck in question for that purpose and, during McGuire's sickness or absence, Bonthank would do that work as a part of his work about the store.

At the time of the collision, July, 1925, the Missouri "Motor Vehicle Statute" (Laws of Missouri, Extra Session, 1921, pages 76 to 106 inclusive) was in force (now constituting Chapter 41, Vol. 2, R. S. 1929, with such amendments as have been made.). A consideration of the entire Motor Vehicle Act will disclose (it seems to the author hereof), that three kinds of "operators" of a motor vehicle are contemplated by the Statute, *first*, a "Chauffeur," "An Operator (a) who operated a motor vehicle in the transportation of persons or property, and who receives compensation for such service in wages, salary, commission or fare, or (b) who as owner or employee operates a motor vehicle carrying passengers or property for hire." (Sec. 3, Laws, Extra Session, 1921, p. 77); *second,* a mere "operator" defined as "any person who operates or drives a motor vehicle." [See aforesaid Session Acts, p. 78.] Lower down on said page 78 a definition is given of a "Registered operator" as "An operator, other than a chauffeur, who *regularly* operates a motor vehicle of another person in the course of or as an incident to his employment, but whose principal occupation is not the operating of such motor vehicle." Section 8 of said Session Acts, page 83, has to do with the registration of "Every person *who desires to operate a motor vehicle as a chauffeur,* etc.;" and the person so desiring to operate as a *registered chauffeur,* upon complying with paragraphs (a) and (b) of said Section 8, shall, under paragraph (c) receive a metal badge bearing the words "Registered Chauffeur, etc.," but "no *certificate of registration as a chauffeur* shall be issued to any person under the age of eighteen years." Section 9 of said Session Acts, page 83, provides for the registration of "Every person who desires to operate a motor vehicle *as a registered operator,* and who complies with the provisions thereof shall receive a 'certificate of registration,'" but no certificate "as a registered operator shall be issued to any person under the age of eighteen years."

Other sections, for example, Sections 12, 15, paragraph (h) of Section 28 and perhaps others, have provisions relating respectively to "Chauffeurs," "*Registered* Operators" and "Operators." So

that it is manifest that they are each in a separate and distinct class with different regulations concerning each class and the only regulation or limitation as to age as to those who are merely "operators" is that they must not be *under* sixteen years of age. [Paragraph (i) of Section 27 of said Session Acts, p. 104.] The only alleged violation of law charged against the driver of plaintiff's truck at the time of the collision is that he was under the age of *eighteen* years, it being conceded that he was over sixteen. But there is no provision in the Motor Vehicle Statute requiring the driver of said truck, under the circumstances shown in this case, to be a *registered* operator and hence to be eighteen years of age. We are therefore of the opinion that the defendant herein is not exempt from the insurance by reason of the provision relied on. As the opinion of the Federal Court of Appeals (45 Fed. (2d) 369) is not *res judicata* on this point as we have above held, said opinion is not *binding* on us, but can be no more than *persuasive* only. And while we have great respect for the opinion of that court, we are not inclined to follow it herein. It is manifest that said court based its opinion upon the ground that the case before it was controlled by a decision of the United States Supreme Court in the case of United States Fidelity and Guaranty Co. v. Guenther (which by our own research we find reported in 50 Sup. Ct. Rep. 165), but in that case there was *an ordinance* of the city of Lakewood where the collision occurred, which made it "unlawful for any owner, bailee, lessee or custodian of any motor vehicle to permit a minor under the age of eighteen years to run said motor vehicle upon public highways, streets or alleys in said City of Lakewood." The Supreme Court went on to say that "No statute of Ohio made unlawful the operation of any automobile by minors over the age of sixteen years," but "as the *ordinance* makes it unlawful to permit a minor under eighteen years of age to operate it," then when a minor only seventeen years of age is permitted to operate it, to say that the operator "is not 'under the age limit' fixed by the ordinance would be merely sticking in the bark." So that the Guenther case upheld the exempting provision of the policy (very similar if not precisely like the one in the case at bar) *solely* because of the *ordinance* of the city. No ordinance of Kansas City, where the collision involved herein occurred, was pleaded or shown in evidence and, so far as the record herein shows, there is none. And hence our view is that the cases relied on by appellant herein are not in point on the question here considered. For the reason that, as we view it, *no showing* was made that the plaintiff's truck "was being operated by any person under the age limit fixed by law," we cannot uphold defendant's contention with reference to the so-called exemption provision of the policy.

The above contention being held inapplicable, there is no question but that plaintiff's evidence otherwise made a case for the jury.

Under the view we have of this case, as above stated, we do not deem it necessary to consider whether there was a waiver of the above mentioned, so-called, exempting provision of the policy or not. The question of whether there was a waiver, is relevant only in the event that it be decided that the aforesaid provision of the policy, of itself and under the facts, exempted the defendant from liability. Moreover, the matter of waiver or no waiver grew out of the defendant's handling and controlling the defense of the damage suit of Herschel Bates against the plaintiff, and the writing of a letter (prepared by defendant's attorneys other than those representing it in this case), from plaintiff to defendant, dated September 1, 1925, the essential part of which is as follows:

"Maryland Casualty Company,

"Kansas City,

"Missouri.

"Gentlemen:

"Referring to my policy . . ., and the claim made thereunder for protection in the case of Herschel L. Bates v. Sam Friedman, now pending in the Circuit Court, on a claim for damages because of an accident which occurred on July 21, 1925, wherein you have heretofore denied liability, and wherein I have demanded that you defend the action and give me protection under the policy.

"Inasmuch as the suit is now pending in the case, I am asking you to proceed with the defense of this case in the usual way, and *let the matter of liability between you and myself be determined after the case herein mentioned has been disposed of.* In the event judgment is rendered against me, and in the event I have to pay this judgment or any settlement made in the meantime and in the event you continue to refuse to pay the same for me, as I contend your policy requires, and in the event that you refuse, then the question of your liability to me can be determined; but, pending such events, you proceed to defend me in this case, and have your legal department handle the case as herein mentioned without cost to me.

"It is understood that if your legal department handles this case, it will be without cost to me, and without any prejudice whatever to your position or my position, as to whether or not you are liable under the policy above mentioned, it being understood that all matters of dispute between you and myself will be determined after the case herein mentioned has been disposed of. (Italics mine.)

"Yours very truly,

"SAM FRIEDMAN.

"The above arrangements is hereby agreed to.

"(Signed)  MARYLAND CASUALTY COMPANY,

"By J. FRANK MILLER."

Frank Miller was the general manager of the defendant company

in Kansas City, but defendant contends that he had no authority to make such agreement because of the *second* provision of the policy set up in defendant's answer and because it introduced another cause of liability. Plaintiff offered evidence tending to prove that defendant undertook to, and did, handle the defense for other reasons than those mentioned in the written agreement, and that there was *no consideration* inuring to plaintiff for such agreement. If, as we have held, the defendant herein was not relieved by the so-called exempting provision of the policy, it would seem that the above agreement was without consideration moving to plaintiff; but what difference does the agreement make, under the situation as it now exists? The case was tried exactly as the agreement provided. The parties agreed that defendant should try the case and handle the defense thereto without cost to · plaintiff, leaving the question of defendant's liability under the policy to be determined later without being affected by defendant's conduct in making the defense to the Bates suit, and this is precisely what was done; and the suit, in the case at bar, is to determine that liability, and plaintiff is not suing for more than he would be entitled to had the written agreement to defend the Bates suit not been made. So we say the questions of waiver and the situation of the respective parties by reason of the written agreement are not necessary to be determined, save perhaps as to whether there is error in an instruction to be hereinafter considered.

Passing the question of whether assignment of error No. 3, as to the admission of an answer to a question put to plaintiff, was insufficient to call for our ruling thereon (which we do because, by combining said assignment No. 3 with the same point No. 3 in the "Points and Authorities," we have a fair and distinct understanding of the matter presented), we hold the point is without merit, and clearly the action of the court in admitting the answer does not constitute reversible error, (1) because the question asked did not call for hearsay testimony but merely whether Berkowitz, upon coming into plaintiff's office, stated the object of his visit. It is true that plaintiff, over the objection of defendant, was allowed to state what Berkowitz said as to the legal effect of the letter hereinabove quoted, and which he brought with him from defendant's attorneys for plaintiff to sign; but, as Berkowitz gave a correct statement of its legal effect, and as plaintiff and his attorney immediately went to Miller, defendant's general manager, where Miller stated the same legal effect, and the letter constituting the written agreement with reservations was then signed and afterwards was carried out, we wholly fail to see how the admission of the evidence complained of can be deemed reversible error. If citation of authority is necessary on the above point, see Royle Mining Co. v. Fidelity & Casualty Co., 132 S. W. 438, 443.

The assignment of error No. 4 is, under the decision of our Supreme Court hereinabove cited, wholly insufficient. Statements in

the ''Assignment of Errors'' that the court erred in refusing to permit it to inquire of the plaintiff as a witness concerning *''certain questions and answers''* previously given in a deposition, for the purpose of impeachment later, and statements on the same point in the ''Points and Authorities'' that the court erred in refusing to allow the plaintiff to be asked if he had not in the giving of a deposition ''made certain answers to certain questions'' and that on direct examination plaintiff had testified to ''a number of certain immaterial matters'' are too indefinite to require an appellate court to assume the role of attorneys preparing a brief, and to perform that work, before attempting the labor of deciding the point. In the ''assignment of errors,'' the page of the record where the ''certain questions and answers'' are to be found is cited thus: ''(Page 64 Abstract);'' no such citation however was given in the ''Points and Authorities;'' but while we do not say that this would cure the insufficiency of the assignment, yet curiosity led us to look at page 64 but do not find any alleged erroneous ruling thereon. We may pause to remark, however, that while indulging our curiosity, we learned that the point sought to impeach plaintiff on was whether plaintiff had given the letter constituting the ''written agreement with reservations'' hereinabove mentioned to his attorney or had taken it with him to Miller's office and *left it with him* to which last plaintiff replied, ''I don't believe I did.'' We cannot see how this would be of such important materiality as to make the court's refusal to contradict plaintiff thereon a matter of reversible error. But, be this as it may, the plaintiff could not be *impeached* as to this by introducing the deposition, because he *freely admitted* that in his deposition he had testified that he had given it to his *attorney,* and then plaintiff testified that he could not remember now (at the trial) which he did.

Assignment of error No. 6 relates to the refusal of the trial court to permit Miller to testify that the attorneys who defended the Bates damage suit ''did not have any authority to waive the conditions of the policy.'' If this assignment is sufficient to preserve the point for our ruling, and without deciding whether it is or not, we may say, first, that the matter sought to be proved by Miller was really *a question of law,* second, that the matter complained of related *solely* to the issue of waiver and had no bearing upon the question of defendant's liability outside of the question of waiver. Hence we think that no reversible error (if there was any) was committed in the regard indicated.

The next alleged error, which we find sufficiently assigned to call for a ruling thereon, is assignment of error No. 8, relates to the action of the trial court, in the case at bar, in permitting the plaintiff to read in evidence the opinion of the judge of the United States District Court in the case when it was on trial in that court. We

cannot find in the record anywhere that the entire opinion (in reality the judge's charge to the jury), was read, but only a few lines therefrom showing merely that the issue of waiver was not tried, and that the question of vexatious refusal to pay was not submitted. This however was offered solely to meet and remove the imputation of *unfairness* on the part of plaintiff's counsel, apparently made by opposing counsel; and the trial court herein, in admitting the part so read, expressly based his ruling on that ground. The small portion of the United States trial judge's opinion, or charge to his jury, which was read, contained nothing bearing upon or affecting the issues to be tried in the state court; and the only reason urged in assignment of error No. 8 is that the matter offered was "entirely immaterial." Moreover, it was afterward admitted, by agreement, that the question of waiver was not tried out by the United States District Court, and the case was, by the United States Appellate Court, sent back for retrial on that question.

Appellant next urges that the court erred in permitting the plaintiff to amend his petition, which, appellant urges in its assignment, added "a cause of action inconsistent ⌐ the cause of action stated in the petition upon which the case was tried" and "by interlining an allegation of estoppel as against the defendant." We have searched the record in vain to find what was the precise amendment by interlineation which it is claimed added a new and inconsistent cause of action; but we have failed to find it and defendant nowhere shows what the amendment was. We find, however, from the record that when leave was asked to make the amendment, plaintiff's counsel said:

"Now, at the bottom of page 2, following the last line, plaintiff asks leave of court to amend by interlineation to conform to the proof heretofore introduced and now before the court and jury, and to insert the following for that purpose: 'And by reason of the matters and facts herein established its claim that it is not liable to the plaintiff.' "

We cannot see wherein this added any new cause of action requiring the court to grant a continuance to defendant. Besides, no affidavit of surprise or for a continuance was filed, nor was any claim of departure made or filed before the trial court; nor did defendant refile any answer, but merely asked orally that the cause be continued. The point is ruled against appellant. [Ash-Grove, etc., Co. v. Southern Surety Co., 39 S. W. (2d) 434, 440; Block v. U. S. Fidelity & Guaranty Co., 316 Mo. 278, 297; Ornellas v. Moynihan, 16 S. W. (2d) 1007, 1011.]

In appellant's assignment of errors, under Assignment 14 relating to plaintiff's instruction No. 3, the said assignment is wholly insufficient, it merely saying the court erred in giving plaintiff's instruction No. 3. But in its "Points and Authorities," under point No.

appellant says, "The court erred in the giving of the plaintiff's main instruction No. 3, both in that the instruction comments upon the evidence, fails to properly define the issues and improperly defines the measure of damages," citing thereunder State ex rel. v. Hamilton, 260 S. W. 466, which, so far as we can perceive, has nothing whatever to do with the point, or with this case. While no pertinent authorities are cited under said point No. 11, yet the reasons why instruction No. 3 is claimed to be erroneous are distinctly and clearly stated, so that, if the instruction is *clearly open to the charges made against it,* the claimed errors are so elementary and can be so readily determined without the necessity of citations of authorities to support it, that we are obliged to consider the point.

Instruction No. 3 is, we think, unnecessarily long, and because of its length we do not set it out in full. In order to a full understanding of the substance of the instruction, it should be stated that, on a letterhead of the defendant company, headed as follows:

"MARYLAND CASUALTY COMPANY
"F. Highland Burns, President
"HOME OFFICE—BALTIMORE
"KANSAS CITY CLAIM DIVISION
"*J. FRANK MILLER, Manager*
"407-12 Fidelity Trust Building
"KANSAS CITY, MISSOURI."

(Italics mine),
is a letter, in evidence, dated July 29, 1925, from "J. Frank Miller, Manager," addressed to plaintiff and referring to claim of Herschel Bates, and stating that "owing to the fact that at the time of the above accident your motor car was being driven in violation of the Missouri law, we are obliged to deny liability under the terms of our policy as there is no coverage under the circumstances."

Said instruction No. 3, in its first paragraph, instructed the jury that *after* the injury to Bates and *after* the letter just quoted denying liability, the defendant company "*could* waive its claim that it was not liable because the person driving the truck when Bates was injured was under eighteen years of age and by acts and conduct *could* estop itself to claim that it was not liable." (Italics mine.) In the next paragraph the jury were told, or further instructed, "that such waiver and estoppel of defendant *could* be created by the acts and conduct of its local manager, Mr. Miller, and its attorneys handling said case of Bates against Friedman and so, etc." (the rest is shown in the next succeeding paragraph of the instruction).

Now, while the two paragraphs above mentioned may have been unnecessary, yet we do not think they contain reversible error. No doubt they were stated because it was strenuously contended throughout the trial, by counsel for the defendant, that because of the last

policy provision set forth in defendant's answer relating to the *power* of any agent to waive, the waiver relied on by plaintiff was invalid.

As to this power to waive, it appears from defendant's evidence that Miller was defendant's resident general manager and had been since November, 1928, and prior to that he was claim manager; that no agent was above him in rank or between him and the home office, in Baltimore; that the incident of the collision of the truck with Bates and plaintiff's claim for indemnity thereunder, were reported to him as such manager, in July, 1925, and that he, Miller, assigned Mr. Cunningham, defendant's local investigator, to investigate it and that Cunningham, after completing "his investigation, . . . reported to me that the driver was less than eighteen years old;" that, after the Bates suit was brought, the "agreement with reservations" (in the form of the letter date September 1, 1925, and hereinbefore quoted) was signed; that the petition in the Bates case was brought to him (Miller), and he and plaintiff and the latter's attorney "discussed the situation;" that he had, theretofore, had some correspondence with the home office, but nowhere was this correspondence introduced in evidence; that he had the said written agreement drawn up and *sent to plaintiff;* but that it was reported to him by the one by whom it was carried, that plaintiff, Friedman, would not sign it unless he were assured he would not lose any of his rights; that he, Miller, had the power to sign and did sign papers, checks or drafts; that when the letter of July 29, 1925, was written denying liability, Cunningham had not completed his investigation but had *merely learned* that the driver of the truck, at the time of the collision, was under eighteen years of age; that it was a part of his, Miller's, work and in the usual course thereof, to write such a letter and that he didn't want to go ahead and complete the investigation without first writing the letter. He further testified that he *made no reply* to a letter dated April 19, 1928, written by plaintiff's counsel notifying him of an opportunity plaintiff had for settling the case for less than was demanded, but mentioning the policy provision that a settlement could not be made without the consent of the company, and asking whether they would give consent; but turned said letter over to his *then* attorneys who had *power to answer.* He did not know whether they had answered or not (plaintiff's evidence is that no answer was made).

Cunningham, witness for defendant, testified that he was an attorney at law, and a claim adjuster for the defendant; that he went to plaintiff's store and talked with Bonthank who was the driver of plaintiff's truck at the time Bates was injured, but never saw or talked with plaintiff. He denied discussing with plaintiff any offer of settlement of the suit by Bates for $500 or any other sum.

Stoll, also an attorney, testified for defendant that he drew up the written agreement or "reservation of rights" while in the office of defendant's then attorneys. He admitted that although he talked about

a settlement of the Bates suit, he never told either plaintiff or his attorney that, if plaintiff wanted to settle the Bates suit, no question would be raised about the provision in the policy that written permission from the company would first have to be obtained. He further testified that he was authorized by defendant's (then) attorneys to write the letter, exhibit No. 13, to plaintiff wherein it is stated that—

"You have advised us that you have an opportunity to settle the litigation for a sum less than the judgment taken against you by the plaintiff but have called our attention to the fact that the insurance policy in question provides in substance that you may not make a settlement with the plaintiff except with the consent of the Maryland Casualty Company.

"It is the position of our client that said policy of insurance does not cover this lawsuit or the accident in question, as we have before stated, and therefore if this position is correct any provision of the policy with reference to your settlement of the litigation has no application to the situation. . . . and our client does not intend by this letter to change such position. . . . and that, in writing it, he "meant just what it said, exactly." He further admitted that in answer to a letter of plaintiff's attorney, dated April 19, 1928, to defendant, saying, in the last paragraph thereof, that there was an opportunity to settle the Bates case, and asking whether the company would insist upon the provision requiring the company's written consent thereto, he wrote, on April 30, 1928, that the company "does not intend to waive" any of the provisions, and that Mr. Friedman must decide for himself what he should do about settling the Bates case; and that witness had, or at least took, authority to, and did, write the letter.

The foregoing is a synopsis or outline of the *defendant's* evidence on the question of waiver or estoppel before the agreement was signed and *outside* of what was done under the written agreement or "reservation of rights." That written agreement is limited to what is to be done in the defense of the Bates action; it clearly does not prevent waiver or estoppel being created, outside of the actual legal defense, by the General Manager Miller and his attorney. In addition to the evidence of waiver coming from the *defendant's* witnesses, there is evidence in plaintiff's behalf, tending to show:

That upon receipt of the letter denying liability on the ground that the truck was being "driven in violation of the Missouri law," he, plaintiff, took the letter to Miller and the latter, after reading it and examining some files or papers, said, "You just leave this letter here with me and we will take care of it" (i. e., the suit); that a few days later, before plaintiff was sued, he again saw Miller and told him he learned from Cunningham that the Bates case could be settled for $500, and Miller replied, "Sam, there is no use of

paying out any money in this case; because we have good attorneys and we can beat that case.'' Plaintiff testified that he replied, ''Well, I hope you will take care of it, Mr. Miller.'' And that Miller replied, ''We will.'' ''Just leave it to us and we will take care of it.'' The evidence in plaintiff's favor was further that the summons in the Bates suit was served on plaintiff around August 8, 1925 (the agreement with ''reservation of rights'' was later), that plaintiff took the summons to Miller and the latter said, ''I will take care of that for you, Sam; don't worry about it. I will take care of it;'' that plaintiff told Miller, he, plaintiff, would himself put in $250 toward settling it if he, Miller, would let him, and that Miller replied, ''Sam, you are crazy, there is no use of you putting out any money,'' and when plaintiff said he would put up the $250, Miller said, ''You can't do it, I won't let you.''

There was also other evidence in plaintiff's behalf that in Miller's office the latter, in discussing why they wanted the ''reservation of rights'' signed, said it was such a case that no one should pay anything in it because the case could be easily beaten; that ''he and no one else would have to pay any money in this and that he did not want Sam Friedman to pay any;'' that when Cunningham was in plaintiff's office making his investigation he said the reason they wanted the ''reservation of rights'' signed was to relieve the company lawyers from any liability for undertaking a defense of the Bates suit; that Miller said he had been talking to Sam and ''Sam was a very good friend of the office and had bought a good deal of their insurance and he wanted to see Sam through. The case is in very good condition, and there is no reason why Sam or I or the company should pay any money in the case;'' that Miller never said that if anybody paid anything the company was not going to pay it.

There was also evidence in plaintiff's behalf that, as early as July 7, 1927, plaintiff's attorney notified the defendant that Bates had offered to settle for $500 and plaintiff wanted to settle but was instructed by defendant not to settle, and defendant's General Manager Miller promised to protect Friedman from any loss by reason of the Bates claim, as a result of which Friedman did not settle the case. (This was not answered or denied by defendant.)

The evidence was clearly sufficient to raise an issue for the jury as to the question of waiver or estoppel. [32 C. J., p. 1315, secs. 565, 567; Royle Mining Co. v. Fidelity & Casualty Co., 126 Mo. App. 104; Fairbanks Canning Co. v. London Guaranty & Accident Co., 133 S. W. 664, 666; Rieger v. London Guarantee & Accident Co., 215 S. W. 920, 929-30; Tinsley v. Aetna Ins. Co., 205 S. W. 78; Cowell v. Employer's Indemnity Corp., 34 S. W. (2d) 705; National Battery Co. v. Standard Acc. Co., 41 S. W. (2d) 599; Luck v. Ft. Dearborn Ins. Co., 54 S. W. (2d) 757; Ornellas v. Moynihan (Ft. Dearborn Casualty, etc., Co., Garnishee), 16 S. W. (2d) 1007.] Defendant

contends there is no evidence of intention to waive, but this is not necessary. [Royle Mining Co. v. Fidelity & Casualty Co., 142 S. W. 438, 1. c. 443.] There is no question but that an agent such as Miller was has power to waive even though the policy expressly states he shall have no such power. [James v. Mutual, etc., Assn., 148 Mo. 1; Block v. U. S. F. & G. Co., 290 S. W. 429; Hiller v. Connecticut Fire Ins. Co., 63 S. W. (2d) 461, 463.] So that said Instruction No. 3 was not erroneous in telling the jury, in its said first two paragraphs, that the exemption claimed *could* be waived or that the defendant *could* be estopped. In the next and remaining paragraphs of said Instruction 3, the jury were told that if they found from the evidence that *after* writing the letter of July 29, 1925, denying liability, and *before* the signing of the paper designated as "reservation of rights," plaintiff was assured by Frank Miller that the company would take care of the case and was told that no settlement should be made and that the case could be beaten; *and* that if the jury further found from the evidence that *after* the paper called the "reservation of rights" was signed by Miller and the plaintiff, settlement of the Bates claim could have been made by plaintiff for less than the amount paid on the judgment, and that there were negotiations between plaintiff's attorneys and defendant's representatives concerning such settlement; *and* that if the jury found from the evidence that in such negotiations the defendant took the position that, because of the provision of the policy as to the lack of power of any agent to waive without written approval of the company, plaintiff was not at liberty to settle without such written approval and that if he did so he would subject himself to the danger of waiving any rights, if any, which he might have against defendant, *then* the verdict must be for plaintiff for the *amount* the jury found from the evidence *he paid out* on the Bates judgment and costs, together with six per cent interest from that time to this date (the date of trial). The instruction was no comment on the evidence, nor did it fail to define the issues, nor was the measure of damages erroneously stated. The waiver was made to depend upon *all* the evidence offered in support of waiver, if found by the jury to be true, including that *before* the signing of the "reservation of rights" as well as that *after* it. As to the measure of damages not being correctly stated, we have not been enlightened by the briefs in what feature or particular, nor why, it is incorrect. Instruction No. 3 is held not to contain reversible error.

- As to the remaining so-called assignments of error, some sixteen in all, we find them to be wholly insufficient under the authorities heretofore cited. Wherever there might appear to be any doubt as to the sufficiency, we have taken the pains to examine the matter as to claimed error, but found such points to be without merit; and having passed upon the objections made by appellant to the judgment, there is nothing to do but to affirm it.

Before closing this opinion, however, we deem it necessary (not for the purpose of criticism nor to "let off steam," but to avoid similar difficulty in the future), to state that our labor in writing this opinion as well as time and difficulty in arriving at an understanding of the case, have been greatly increased by the unusual way in which the briefs have been constructed. In addition to this, although the case is long and complicated in the facts involved and a large number of exhibits were introduced the index of appellant's abstract makes no mention of them, not even giving the page of the record where the policy sued on was to be found; there was nothing in the index to show where demurrers could be found nor where the evidence in chief ended and defendant's began. The fact that our Rule 30, as to indices, carries no penalty for its violation is not a good reason for failure to observe it.

The judgment is affirmed. All concur.

### On Motion for Rehearing.

TRIMBLE, J.—The author hereof was under the impression that the original opinion disclosed that, under all the pleadings herein, the issue of liability under the policy, as well as the issue of waiver of the so-called exemption therefrom, were in the case. Indeed, it seemed that this was because of a subconscious, or at least a silent implied, feeling on defendant's part that perhaps the defense of *res judicata* might not hold water, that the defense was set up that defendant was not liable because the driver of the automobile was under eighteen years of age. In addition to the other things set out in the opinion, showing that the petition at the very first pleaded and relied on liability under the contract of insurance *as it stood*, it may be stated that the amended petition on which the case was tried, also clearly shows it relies *still* on the insurance contract, and that even if the defense, sought to be set up as to the driver not being authorized by law to operate the automobile, be deemed a defense, yet that there was no clause in the contract nor consideration therefor, authorizing the defendant to claim that defendant was not liable solely because the said driver was under eighteen.

The defendant's amended answer set up the defense that the driver was under eighteen and by reason thereof defendant was not liable under the policy, and *then* it pleaded another affirmative defense, namely, *res judicata* as to that. The course at the trial shows that three issues were involved. (1) as to the coverage of the policy when the said driver was between sixteen and eighteen; (2) whether, if this defense were good, this defense had been waived; and finally (3) whether the defense as to coverage had been adjudicated. So that it is not seen how it can be said that the opinion decides this appeal upon an issue not involved in the case. The fact is, the opinion does not decide the case solely on that issue, but considers all of the issues raised,

and attempted to be raised, and holds that the case should be affirmed upon each and all of them. The fact that defendant asked instructions on the theory that the driver's age forbade him to drive, shows that such was an issue in the case and that the question of *res judicata* was not the *only* defense raised by appellant at the trial from which this appeal was taken. Again this would seem to show that the original opinion did not dispose of the appeal upon a point or an issue not raised by the appeal. Moreover, even if the insufficiency of the proof to establish *res judicata* be not a point raised in the briefs, yet since it is used to *support* the judgment rendered, and not to destroy it, we are at liberty to raise it ourselves and are not confined merely to points raised, as we are when the effect is to *reverse* the judgment.

Aside from the above, we entertain the view that the opinion handed down speaks for itself and answers every contention raised in the motion for rehearing. Said motion is therefore overruled. All concur.